582 A.2d 861

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William BASEMORE, Appellant.**

Supreme Court of Pennsylvania.

Argued April 2, 1990.

Decided Nov. 16, 1990.

514

516

James S. Bruno, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Jack McMahon, Asst. Dist. Atty., Harrisburg, Kathy L. Echternach, Philadelphia, Robert A. Graci, Chief Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On May 3, 1988, Appellant, William Basemore was convicted by a jury of murder of the first degree, robbery, burglary and possession of an instrument of crime. On May 4, 1988, a sentencing hearing was held pursuant to the Sentencing Code, 42 Pa.C.S.A. § 9711, and the jury unanimously sentenced Basemore to death.[1] On February 15, 1989, post-trial motions were argued by counsel and denied

---

**1.** At the sentencing hearing the Commonwealth offered one aggravating circumstance in support of the death penalty, that Appellant had committed the killing while in the perpetration of a felony. 42 Pa.C.S.A. § 9711(d)(6). The defense offered mitigation evidence including: the defendant's age at the time of the crime (twenty-four) 42 Pa.C.S.A. § 9711(e)(4); and general evidence concerning the character of the defendant (that he had been involved in the community teaching drama, dance, and playing the guitar for children at the Young Women's Christian Association and that he participated in raising his four year old son to whom he made financial contributions) 42 Pa.C.S.A. § 9711(e)(8).

518

by the trial judge, who formally sentenced Basemore to death.[2] This direct appeal followed.

Although, Appellant does not raise the issue, pursuant to this Court's decision in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982) cert. denied, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), reh'g denied, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983) we are required to review all death penalty cases for the sufficiency of the evidence to sustain a conviction for murder of the first degree.

■ Viewing the evidence in the light most favorable to the Commonwealth, the record reveals the following facts: Two days before Christmas, on December 23, 1986, a burglary, robbery, and murder occurred at the Riverfront Dinner Theater (the Riverfront) in Philadelphia, Pennsylvania. Appellant, who had previously been employed at the Riverfront as a pantry worker but had been fired in November of 1986, entered the restaurant by removing the slats from a window in the men's room in the rear of the building. After entering the building, Appellant placed a chair under the window and used a homemade hook device to lift an acetylene tank, an oxygen tank, a cutting torch, martial arts weapons[3] and other equipment (a wrench, safety goggles and a striker which is used for lighting torches) into the building. Appellant confronted George Weiss, an elderly security guard who was working the "graveyard shift" at the Riverfront, in the reservation office where Weiss was watching television. Appellant brutally attacked and murdered the deceased who made an

2. On the remaining charges Basemore was sentenced to the following concurrent terms: ten to twenty years for robbery; ten to twenty years for burglary; and two and one-half to five years for possession of an instrument of crime.

3. These weapons included a knife and a homemade spear type weapon which was approximately three feet, ten inches long and consisted of a wooden pole wrapped with black electrical tape with a scaleless throwing knife attached to one end with tape and a four point "shuvkin" or throwing star attached to the other end with yellow synthetic rope.

effort to defend himself, but proved no match for Appellant and his martial arts weapons.[4]

Appellant then dragged the body into the sales office of the Riverfront where a safe was located. Appellant used a cutting torch, fueled by oxygen and acetylene, to burn a hole into the top of the safe. The content of the safe caught fire and was doused with water. Appellant took from the safe money and imitation gold coins inscribed with the name of the company that owned the restaurant (Tabas Enterprises) which were sold as gift certificates, and fled the premises. In fleeing, Appellant left behind the murder weapons, the acetylene and oxygen tanks and the aforementioned other equipment.

The deceased's body was discovered in the early morning on December 24, 1986, in the sales office. The deceased was found lying on his back with his legs spread apart, a chair resting on top of him and his clothing pushed up under his arms exposing his chest and stomach. A blood-stained knife was found entangled in the clothing. In the sales office the police also discovered the acetylene and oxygen tanks, the homemade ten-inch spear, made of a wooden pole with a martial arts throwing knife attached to one end with black electrical tape, and a martial arts throwing star attached to the other end with yellow synthetic

**4.** A forensic pathologist testified that Weiss sustained eight stab wounds of the body including the neck, chest, shoulder, left side of the body and left arm and suffered a number of slash wounds, cuts and scratches on his face, chin, right side of the chest, left wrist and left hand. One of the stab wounds was to the middle of Weiss' neck in the area of the "Adams apple". A second stab wound to the right side of chest, near the base of the neck, revealed that the weapon was plunged into the body to its handle as evidenced by an additional scrape wound called a hilt mark. A stab wound to the shoulder went in a depth of five inches. Two additional stab wounds of the chest were made with such force that they went directly through the bone of the third and sixth ribs bending the knife. A fourth wound to the chest cut the cartilage of the fourth rib, went into the lower lobe of the right lung and penetrated the pericardial sac which surrounds the heart. A stab wound to the left forearm originated in the back of the arm and exited in the front of the arm. A three inch stab wound to the left palm, in addition to cuts to the thumb, webbing between the fingers, and palm, were described as defensive wounds. The pathologist testified that the cause of death was stab wounds to the neck, chest and upper left extremity.

rope. Charred currency was found near the safe along with charred boxes that had previously contained the "gold coins gift certificates". In the reservation office the police found a wrench, safety goggles, and a striker which is used for lighting welding torches. In the men's bathroom (the point of entry) a chair was discovered underneath the bathroom window. Under the chair was a mesh-type sling made from yellow synthetic rope held together with black electrical tape. In the hallway at the north end of the building the police discovered a curtain rod with a hook device taped to one end with silver duct tape.

The police initiated their investigation by tracing the serial numbers from the fuel tanks to the Woodland Oxygen Company, a retail store which sells cylinders, gasses, welding supplies and equipment. The business records and receipts at the Woodland Oxygen Company showed that Appellant purchased acetylene bottles on November 24, 1986, and an oxygen tank on December 10, 1986, which he brought back to the store on December 11, 1986, for repair. The police also traced the martial arts weapons found at the Riverfront to the Asian Martial Arts World store. Employees from both the Woodland Oxygen Company and Asian Martial Arts World stores picked Appellant out of a photo array and later identified him at trial as a customer.

A search warrant and an arrest warrant were authorized and executed at Appellant's residence. Appellant was present in the residence when the police arrived but diverted their attention by stating that he was the boyfriend of Appellant's sister and that the last time he saw Basemore (Appellant), Basemore was sleeping on the living room couch at 3:00 a.m. TT., April 27, 1988, p. 290–291. The police ascertained Appellant's identity after noticing a distinguishing scar on his left forearm and placed him under arrest. Appellant then blurted out that "he worked at the Riverfront and there's lot of shit going down there and he wanted to tell [the police] about it". TT., April 27, 1988, p. 294.

While executing the search warrant, the police found two shoe boxes hidden in Appellant's bedroom under a bureau, containing all but four of the "gold coin gift certificates" missing from the Riverfront. (The gift certificates were identified by serial number.) Located in a bureau drawer was a receipt dated December 10, 1986, from the Woodland Oxygen Company listing Appellant's name and indicating the purchase of a "set for oxygen service" and an adapter. A wallet hidden under a bed contained a twenty-five dollar ($25.00) "gold coin gift certificate" and identification cards belonging to Appellant. A footlocker in the bedroom contained ninety dollars ($90.00) in charred United States currency. In Appellant's mother's bedroom under a mattress the police found several knives wrapped in newspaper. Attached to one of the knives was yellow cord similar to the cord used on the sling device and spear found at the Riverfront. Some of the knives were wrapped with black electrical tape in a manner similar to the weapons found at the Riverfront. In the basement at Appellant's residence the police discovered numerous martial arts weapons including a homemade spear made of a wooden pole with a martial arts throwing knife attached to one end with black electrical tape, and a martial arts throwing star attached to the other end with yellow synthetic rope—a replica of the spear found at the Riverfront. The police also found blood stained overalls which were later tested and showed the presence of blood consistent with the blood type of the victim, George Weiss. (Weiss' clothing was also tested and showed the presence of blood consistent with the blood type of Appellant.)

Based upon the foregoing evidence, we find that the evidence was sufficient to support the jury's verdict of first degree murder beyond a reasonable doubt.

In this appeal Appellant raises six issues for our review. Appellant initially argues that he was denied a fair trial because the trial court refused to grant his request for a continuance to obtain new court-appointed counsel.

■ The decision of whether to grant a request for a change of counsel is a matter vested to the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion. *Commonwealth v. Segers,* 460 Pa. 149, 331 A.2d 462 (1975), *Commonwealth v. Williams,* 514 Pa. 62, 522 A.2d 1058 (1987). Our rules of criminal procedure provide that "[a] motion for change of counsel by a defendant to whom counsel has been assigned, shall not be granted except for substantial reasons". Pa.R.Crim.Pro. 316(c). *See also, Williams,* supra.

In *Commonwealth v. Szuchon,* 506 Pa. 228, 248, 484 A.2d 1365, 1376 (1984), quoting, *Pirillo v. Takiff,* 462 Pa. 511, 341 A.2d 896 (1975), this Court determined that while a criminal defendant has a constitutionally guaranteed right to be represented by counsel of his own choosing that right is not *"absolute"*. We stated that the defendant's right to choose his own counsel "must be weighed against and may be reasonably restricted by the State's interest in the swift and efficient administration of criminal justice". *Commonwealth v. Szuchon,* 506 Pa. at 249, 484 A.2d at 1377, quoting *Moore v. Jamieson,* 451 Pa. 299, 308, 306 A.2d 283, 288 (1973).

In *Szuchon,* a capital case, the defendant refused court appointed counsel until one week before trial. He then refused to co-operate with court appointed counsel until several days before trial and refused to waive his right to a speedy trial in order to allow counsel additional time to prepare a defense. In resolving Szuchon's claim of ineffective assistance of counsel we stated:

Where a defendant knowingly and intelligently waives his right to counsel, or knowingly and intelligently refuses appointed counsel while insisting on privately retained counsel without taking steps to secure such private counsel, the defendant must be prepared to accept the consequences of his choice.

*Id.* 506 Pa. at 250, 484 A.2d at 1377. We held that under these circumstances the trial court is *"justified in refusing to grant a continuance in order to allow the defendant*

*additional time within which to obtain new counsel of his choice and the defendant may be deemed to have waived his right to counsel of his choice ". Id.* (emphasis added).

In this case, Appellant personally addressed the court on two separate occasions and requested a continuance stating that the defense investigation was not complete. At the same time defense counsel related that he was prepared to go to trial. The trial court denied Appellant's requests for continuance.

On the third day of the proceedings before voir dire resumed, defense counsel advised the court that Appellant wanted to plead guilty in return for the Commonwealth's recommendation that he be sentenced to life imprisonment. When the Court began to colloquy Appellant as to the voluntariness of his plea, Appellant asked for permission to address the court a third time. Permission was granted and Appellant, who had no intention of pleading guilty, fired court appointed counsel, stated that he wished to proceed pro se, and declared that he "would be more than happy to go to trial with the same case only with another attorney by [his] side". TT., April 20, 1988, p. 171–172. Appellant added that counsel was "trying to sell [him] out" in advising him to plead guilty. *Id.* When Appellant was asked by the court whether he wished to represent himself he replied, "I want new counsel. You know as well as I do I don't know nothing about no law. I need someone to represent me. I don't have any counsel." TT., April 20, 1988, pp. 180, 181.

Following this episode a conference was conducted in chambers with both counsel present. At this time defense counsel requested that the case be continued and that another attorney be appointed to represent Appellant. Defense counsel at the court's request delineated the steps he had taken to prepare for trial. The trial court acknowledged defense counsel as "very effective and experienced, competent diligent counsel" who was prepared to proceed to trial. TT., April 20, 1988, p. 203. The court determined that Appellant did not wish to proceed pro se, and denied

the request for a continuance to obtain new court-appointed counsel.

Clearly, the trial court did not abuse its discretion in refusing to grant the request for a continuance to obtain new court-appointed counsel when it was obvious that the request was only a ruse, designed to delay the inevitable—a trial on the charge of murder of the first degree. Appellant, in failing to take any steps to retain a private attorney, and in belatedly requesting a continuance and the appointment of new court-appointed counsel without setting forth substantial reasons therefore, waived his right to counsel of his choice.

Appellant next argues that the trial court erred in removing him from the courtroom during jury selection and trial.

The United States Constitution [5] the Pennsylvania Constitution [6] and Pennsylvania Rules of Criminal Procedure 1117(a) [7] guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial. However, in *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the United States Supreme Court determined that the right to be present in the courtroom is not absolute and explicitly held,

> that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct

5. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.

6. "In all criminal prosecutions, the accused hath a right ... to meet the witnesses face to face...." Pa. Const. Art. 1 § 9.

7. "The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule." Pa.R.Crim.Pro. 1117(a).

himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

*Id.* at 343, 90 S.Ct. at 1060–1061, 25 L.Ed.2d at 359. *See also, Commonwealth v. Africa,* 466 Pa. 603, 353 A.2d 855 (1976).

■ Appellant initially made it clear that he intended to disrupt the courtroom on the second day of the proceedings during voir dire when he stated:

> Bring them in, you want to, go ahead. I'll wait for them to come through the door.... If you want to bring those people in, bring them in but I tell you, you want to have a mockery today, you have to have a game today, you want to play, bring them in, I'll wait.

TT., April 20, 1988, p. 171. When questioned by the trial judge, Appellant was unresponsive and attacked the trial judge asking him if he was "out for blood", and if he had "wax" in his ears. TT., April 20, 1988, p. 183–184. Appellant threatened to disrupt the proceedings a second time and was warned by the trial judge that if he did so he would be removed from the courtroom. TT., April 20, 1988, p. 185.

When jury selection resumed, Appellant made a third outburst, addressing a prospective juror as follows:

> I have a question. Miss, this guy is not my lawyer. I fired him for ineffective counsel. I have civil suits filed against him. I've had him under surveillance for three months. They will not give me another lawyer. They trying to make me take their lawyer. He's been lying the whole entire time. He is not my counsel. He have given me no paperwork. I do not know what's going on and he is not my lawyer. I'm asking, I'm, begging do not take part in this charade because this man is not my lawyer. He is not. I fired him. It's on the record but they will not give me another counsel. They trying to tell me I have to take him when I don't have to do anything. He was going to sidebar quite a few times. Wouldn't let me know. He told me I do not have any rights. He told me

to take a deal for life in prison for something I did not do. I'm begging you not to take part in this charade.

\* \* \* \* \* \*

Mr. Stein is not my lawyer. He's not my lawyer. Miss, don't even listen to what he's saying. Don't waste your time. If you take part in this charade, my blood will be on you hands. He is not my lawyer. I've had him defaced.

TT., April 20, 1988, p. 191–192.

After a discussion in chambers with counsel, the trial judge in open court again warned Appellant that if he disrupted the proceedings he would be removed from the courtroom. The trial judge stated:

We are going to proceed with one more juror. If you disrupt the voir dire with regard to that juror, you will be removed from this courtroom and your trial will proceed in your absence.

TT., April 20, 1988, p. 204. Another prospective juror was questioned by counsel and Appellant blurted out: "I do not have a lawyer, and this man is—they trying to get me to take that character when I do not have a lawyer and it's good that you're going to be dismissed. Glad to hear it and you can let him go". TT., April 20, 1988, p. 208. The juror was excused and Appellant was, pursuant to the trial judge's earlier warning, removed from the courtroom.

After an afternoon recess the trial commenced and Appellant was brought before the court. The trial judge explained to Appellant that he could return to the courtroom at any time, provided that he agreed not to disrupt the proceedings. The trial judge at this time encouraged Appellant to participate in his trial calling to mind the seriousness of the charges. Upon Appellant's continued refusal, the trial judge determined that the trial would continue in his absence and, in an abundance of caution, directed the sheriff's department to bring Appellant to the courtroom each day. The trial court also ordered the sheriff's department to have a sheriff's deputy with Appellant at all times so Appellant could notify the court in the event that he wished

to return to the courtroom. The trial judge also directed defense counsel to meet with Appellant each morning and each afternoon to determine whether he wished to return to the courtroom. The trial judge also made arrangements so that Appellant could view the trial court by closed circuit television. Appellant monitored the trial each day and was brought into the courtroom briefly on several occasions for identification purposes. Finally, after having been removed from the courtroom on April 20, 1988, Appellant on May 3, 1988, agreed to conduct himself properly and returned to hear closing arguments.

In this case, the trial court displayed a great deal of patience and dignity in dealing with Appellant's histrionics. More importantly, the court followed the guidelines set forth in *Allen, supra*, by warning Appellant before removing him from the courtroom and by giving Appellant the opportunity to return at any time provided he agreed to conduct himself properly. Additionally, as the Commonwealth points out in its brief, Appellant was not removed in the presence of prospective jurors and none of the jurors who served on the jury witnessed Appellant's disruptive behavior. Moreover, the court advised prospective jurors that Appellant's absence was unrelated to his guilt and questioned each juror to ensure that Appellant's absence from the courtroom would not impact on their ability to be fair. Accordingly, we find that the court did not abuse its discretion in removing Appellant from the courtroom and that Appellant did not suffer any prejudice during the course of his trial due to his absence.

Appellant next argues that he was denied a fair trial because the jury was death-qualified which Appellant claims produces prosecution-prone juries.

The United States Supreme Court has held that "the Constitution does not prohibit the states from 'death qualifying' jurors in capital cases". *Lockhart v. McCree*, 476 U.S. 162, 173, 106 S.Ct. 1758, 1764, 90 L.Ed.2d 137, 147 (1986). Most recently this Court, citing *Lockhart*, in *Commonwealth v. Bryant*, 524 Pa. 564, 574 A.2d 590 (1990)

rejected a capital defendant's claim that he was deprived of a fair trial due to death qualification of the jury. In *Bryant* we reaffirmed our position that death-qualification does not produce prosecution prone juries. *See also, Commonwealth v. Morales,* 508 Pa. 51, 494 A.2d 367 (1985), *Commonwealth v. Szuchon,* 506 Pa. at 257, 484 A.2d at 1381.

Appellant next argues that trial counsel was ineffective in failing to object to four prejudicial statements made by the prosecutor during closing arguments at the sentencing hearing.

█ In capital cases, as in all criminal cases, the standard for determining the effectiveness of trial counsel's performance is whether the underlying claim is of arguable merit, whether counsel's performance was reasonable, (i.e. the course chosen by counsel has some reasonable basis to effectuate his client's interest) and whether the defendant has demonstrated prejudice. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), *see also, Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989). We find that Appellant's assertions of ineffectiveness of counsel in regard to improper prosecutorial remarks, taken individually or together, are without merit.

█ The Sentencing Code provides that after "the presentation of evidence, the court shall permit counsel to present argument for or against the sentence of death". 42 Pa.C.S.A. § 9711(a)(3). The Commonwealth, during the sentencing phase of a capital case, must be afforded "reasonable latitude" in arguing its position to the jury, *Commonwealth v. Zettlemoyer,* 500 Pa. at 55, 454 A.2d at 958, and may employ "oratorical flair" in arguing in favor of the death penalty, *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983) cert. denied 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984) reh'g denied 468 U.S. 1226, 105 S.Ct. 27, 82 L.Ed.2d 920 (1984).

Appellant asserts first that counsel was ineffective in failing to object to the following prosecutorial remark:

I think by your verdict yesterday and the speed with which you reached it shows to you clearly that aggravating circumstance is present, that the defendant in fact did kill Mr. Weiss in the perpetration of a felony.

TT., May 4, 1988, p. 873.

 We reject appellant's argument that the prosecutor improperly stated his opinion as to Appellant's guilt in referring to the speed of the verdict and clear evidence of aggravating circumstance. After all, the jury had already made findings of fact with regard to the aggravating circumstance that "the defendant committed the killing while in the perpetration of a felony" by convicting Appellant of murder of the first degree, robbery and burglary. In *Travaglia*, we stated that "[t]he prosecutor's statement of his personal belief in the [defendant's] guilt can in no way be prejudicial where guilt has already been established." *Id.* 502 Pa. at 502, 467 A.2d at 302.

 We also reject Appellant's second assertion that counsel's failure to object to the prosecutor's comment on the quality of his mitigation evidence constitutes ineffectiveness:

... it will be crystal clear to you that the Commonwealth has in fact proved beyond a reasonable doubt the one aggravating circumstance and that the fact that he was twenty-four and taught guitar and dance is not even a mitigating factor at all. It should not even be checked off but if you do want to give that as some sort of mitigation, God knows, that doesn't mitigate and outweigh the horrible, horrible crime that occurred to Mr. Weiss, ...

TT., May 4, 1988, p. 879–880.

This court has held that a prosecutor may make a legitimate, unimpassioned response to evidence presented by the defendant to prove mitigating circumstances. *See, Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152, 1157 (1986) (prosecutors properly argued that the defendant's low intelligence did not excuse his criminal conduct), *Com-*

*monwealth v. Duffey,* 519 Pa. 348, 548 A.2d 1178 (1988); (prosecutor properly argued that the defendant's history of childhood epilepsy did not constitute a mitigating circumstance). In this case the prosecutor's remarks that teaching guitar and dance were not mitigating factors and that, in the alternative, these factors did not outweigh the aggravating circumstance were fair comments on the evidence presented.

Similarly, Appellant's third assertion that counsel was ineffective in failing to object to the prosecutor's remark that the murder was a "well thought out, carefully planned, execution", TT., p. 874, is meritless. This court has previously permitted a prosecutor's reference to a capital defendant as a systematic, brutal, calculating, killer, *Commonwealth v. Marshall,* 523 Pa. 556, 568 A.2d 590 (1989) and a "clever, calculating and cunning, executioner", *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987). We find the prosecutor's remark in this case perfectly innocuous.

Additionally, we find no merit to Appellant's fourth assertion that counsel was ineffective in failing to object to the following prosecutorial comment:

Now imagine the fear and also think about Mr. Weiss attempting to ward this vicious attack off. Where is the sympathy there?

TT., May 4, 1988, p. 876. This court has held that referring to the victim, remarking on the victim's effort to prevent his or her death, and asking the jury to show the defendant the same sympathy he exhibited toward his victim, were not outside the bounds of permissible argument. *See, Commonwealth v. Travaglia,* 502 Pa. at 501, 467 A.2d at 301, *Commonwealth v. Duffey,* 519 Pa. at 371, 548 A.2d 1189.

Appellant argues next that trial counsel was ineffective in failing to present, during the penalty phase of the trial, the mitigating circumstance that Appellant "did not have a significant history of prior criminal convictions". 42 Pa.C.S.A. § 9711(e)(1). Appellant's argument in this regard

is erroneously premised on the fact that his single prior conviction for robbery would not have been admissible if offered by the prosecution to rebut the evidence that Appellant did not have a significant history of prior criminal convictions.

Under Pennsylvania law, a single felony conviction for a crime of violence will not suffice to establish the *aggravating* circumstance that "the defendant has a significant history of felony convictions involving the use or threat of violence to the person" 42 Pa.C.S.A. § 9711(d)(9). *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985). However, in *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984), this court stated that "the trial court, correctly left it to the jury to determine" whether or not the defendant's single prior conviction for robbery rebutted evidence of the mitigating circumstance that the defendant did not have a significant history of prior criminal convictions. *Id.*, 506 Pa. at 238 fn. 4, 484 A.2d at 1370 fn. 4. Thus, a single prior criminal conviction is admissible to rebut the *mitigating* circumstance that the defendant does not have a significant history of prior criminal convictions.

Accordingly, in the present case trial counsel's tactical decision not to present evidence of the mitigating circumstance that Appellant had no significant history of prior criminal convictions, was one reasonably designed to effectuate his client's interest. Indeed, before the penalty hearing began defense counsel sought, and after extensive argument, obtained from the court, an advance ruling prohibiting the Commonwealth from introducing the evidence of Appellant's prior conviction for robbery. If defense counsel had introduced evidence to prove the aforementioned mitigating circumstance he would have opened the door for the introduction of Appellant's prior conviction for a similar felony—the gunpoint robbery of a former employer in 1986. Defense counsel's belief that the disadvantage of the jury hearing about Appellant's prior record far outweighed any advantage gained by introducing the lack of a significant history of prior criminal convictions was

reasonable. *Cf. Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986) (counsel's failure to present evidence of good character at trial or *as evidence of mitigating circumstances at sentencing* did not constitute ineffectiveness where counsel's concern, that the potential harm from cross-examination of character witnesses outweighed the doubtful value of their testimony); *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167 (1986) (trial counsel's failure to present other character witnesses to establish mitigating circumstances not per se ineffective).

Appellant's next argument is that the death penalty statute is unconstitutionally vague because it inadequately defines the terms "felony", "significant", and "torture" as used in the aggravating circumstances: the defendant committed a killing while in the perpetration of a felony, 42 Pa.C.S.A. § 9711(d)(6); the defendant has a significant history of felony conviction involving the use or threat of violence to the person, 42 Pa.C.S.A. § 9711(d)(9); and the offense was committed by means of torture, 42 Pa.C.S.A. § 9711(d)(8), respectively. Appellant finally argues that the statute is vague because it does not provide a standard for weighing aggravating and mitigating circumstances.

As to the term "felony" as used in the aggravating circumstance the defendant committed a killing while in the perpetration of a felony, it is clear that it is adequately defined by reference to our Crimes Code which specifically designates those crimes which are felonies. 18 Pa.C.S.A. § 101 et seq.

As to the terms "significant" and "torture" Appellant's arguments must be rejected. We have consistently held that "a claimant cannot challenge the constitutionality of a statute abstractly". *Commonwealth v. Maxwell,* 505 Pa. 152, 169, 477 A.2d 1309, 1318 (1984). *See also, Commonwealth v. Albrecht,* 510 Pa. 603, 511 A.2d 764 (1986). The Commonwealth in this case did not proceed with the aggravating circumstances that "the defendant has a *significant* history of prior felony convictions involving the

use or threat of violence to the person," 42 Pa.C.S.A. § 9711(d)(9) and that "the offense was committed by means of *torture*" 42 Pa.C.S.A. § 9711(d)(8) (emphasis added).

Similarly, Appellant's argument that the death penalty statute is impermissibly vague in that it fails to provide a standard for weighing aggravating and mitigating circumstances must be rejected. The jury in this case found one aggravating circumstance and no mitigating circumstances and thus, was required to impose the death sentence. 42 Pa.C.S.A. § 9711(c)(1)(iv). Because the jury did not engage in the process of weighing aggravating and mitigating circumstances, Appellant's argument is again made in the abstract.

Having reviewed the entire transcript of the proceedings including sentencing, we conclude that the sentence of death in this case was not the product of passion, prejudice or any other arbitrary factor, 42 Pa.C.S.A. § 9711(h)(3)(i), and that the evidence plainly supports the jury's finding of the aggravating circumstance of killing while in the perpetration of a felony, to wit, the murder of George Weiss during the robbery and burglary of the Riverfront Dinner Theater. 42 Pa.C.S.A. § 9711(h)(3)(ii). After considering the circumstances of this crime, and the character and record of the accused 42 Pa.C.S.A. § 9711(h)(3)(iii) together with the data and information compiled by the Administrative Office of Pennsylvania Courts as to the penalty imposed in similar cases, *see, Commonwealth v. Frey,* and appendix attached thereto, 504 Pa. 428, 475 A.2d 700 (1984), cert. denied 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we conclude that the sentence of death in this case is not excessive or disproportionate to the penalty imposed in similar cases.

The judgment of sentence is affirmed.[8]

---

**8.** The Prothonotary of the Eastern District is directed to transmit, as soon as possible, the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor. 42 Pa.C.S.A. § 9711(i).

FLAHERTY, J., joined this Majority Opinion and filed a concurring Opinion.

CAPPY, J., filed a concurring Opinion.

ZAPPALA, J., filed a dissenting and concurring Opinion which was joined by NIX, C.J.

FLAHERTY, Justice, concurring.

It is argued the defendant had a statutory right to assert as a mitigating circumstance that he had no significant history of criminal convictions, and perhaps that is the case, but to hold the Commonwealth is precluded from rebutting the obvious inference created in the minds of the jurors by that assertion is a result certainly never contemplated by the legislature and one I see as totally absurd. Yes, a credible, albeit strictly technical, argument can be made to the contrary based upon our opinion in *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), but in my view there is quite a difference between the Commonwealth asserting a statutorily defined aggravating circumstance and its ability to rebut the obvious inference created by the mitigating circumstance in question. In the latter instance the character of the defendant is made an issue necessarily and our law should not be construed in a fashion which would work to mislead a jury. The defendant, by electing to submit such a mitigating circumstance is in effect making his character an issue and must expect the rebuttal which normally follows. Counsel could not forecast the law being otherwise and, I believe, was not ineffective in not taking such a risk.

I join the majority.

CAPPY, Justice, concurring.

I concur in the result reached by the majority. I agree that trial counsel was not ineffective in failing to present, during the penalty phase of the trial, the mitigating circumstance that appellant did not have a significant history of prior criminal convictions. However, I write separately to express what I believe the legislature intended regarding

the specifically enumerated aggravating and mitigating circumstances involved in this case.

At the time of the penalty hearing, appellant had one prior conviction, which extraordinarily was a gunpoint robbery at the business of a previous employer of the appellant. It was counsel's strategy to keep that information from the jury by offering other mitigating factors such as appellant's age, his involvement in community work, and his relationship with his son.

Prior to the penalty hearing, counsel sought a ruling from the court regarding whether, by offering this evidence under section 9711(e)(8)[1], the prosecutor would be barred from introducing appellant's prior conviction. Counsel specifically stated that he was not proceeding under Section 9711(e)(1)[2] so as not to mislead the jury into believing that appellant had no prior criminal convictions. Trial counsel argued that because he was introducing this evidence in mitigation to show that appellant was a good father and that in the past, he had been involved in some community activities on a volunteer basis, and not to portray appellant as an honest or nonviolent person, the Commonwealth should be prohibited from presenting the fact of appellant's prior conviction since such bore no relationship to those traits which he sought to portray. The trial court ruled that the Commonwealth could not rebut this particular character testimony by introducing appellant's prior conviction. The court, however, cautioned defense counsel that should the witness volunteer that appellant had never been in any trouble or had always been a model, law abiding citizen or "does anything that I [the trial judge] think unfairly portrays the defendant in a light that would allow

1. 42 Pa.C.S. § 9711 provides:
 (e) **Mitigating circumstances.**—Mitigating circumstances shall include the following:
 (8) Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.

2. 42 Pa.C.S. § 9711(e)(1) provides:
 (1) The defendant has no significant history of prior criminal convictions.

this conviction," the Commonwealth would then be permitted to rebut that evidence with evidence of appellant's prior conviction.

Prior to announcing his ruling, the trial judge noted that proof of a single prior conviction would not be admissible to establish the aggravating circumstance of significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9).[3] He also remarked that there was no case law on whether, given the parameters of the evidence the defense sought to introduce, the Commonwealth would be entitled to rebut that evidence with proof of a single prior conviction where the defense was not proceeding with the possible mitigating circumstance of lack of prior significant criminal violations.

The majority holds that trial counsel was not ineffective for failing to utilize (e)(1) because a single prior criminal conviction is admissible to rebut the mitigating circumstance that the defendant does not have a significant history of prior criminal convictions. In support thereof, the majority relies upon footnote 4 of our decision in *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984). I believe, however, that footnote 4 of *Szuchon* is *dictum* and, therefore, of no binding precendential value.

In his concurring opinion, Mr. Justice Flaherty concludes that when a defendant attempts to establish the mitigating circumstance pursuant to 42 Pa.C.S. § 9711(e)(1) [4], the character of the defendant is made an issue necessarily and, therefore, cross-examination and/or rebuttal as to the defendant's character is proper. I disagree.

As we noted in *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83

---

**3.** 42 Pa.S.C. § 9711(d) provides:

 (d) **Aggravating circumstances.**—Aggravating circumstances shall be limited to the following:

 (9) The defendant has a significant history of felony convictions involving the use or threat of violence to the person.

**4.** While Mr. Justice Flaherty does not explicitly state that the mitigating circumstance to which he is referring is, indeed, (e)(1), it appears to this writer to be the only logical inference.

L.Ed.2d 296 (1984), the purpose of the aggravating and mitigating circumstances is to narrow the category of cases wherein the death penalty will be imposed and to provide a meaningful basis for distinguishing the cases in which that penalty is appropriate from those in which it is not. It is my belief, therefore, that in enacting mitigating circumstance (e)(1), the legislature intended to provide a defendant the opportunity to argue to the jury that he or she has no *significant* criminal history. Similarly, as Mr. Justice Zappalla notes in his dissent, mitigating circumstance (e)(8) was intended to afford the defendant an opportunity to inform the jury of some "positive qualities" in his or her life that should be considered in the jury's determination of whether a sentence of death is appropriate. While both sections technically deal with the character of the defendant, it is clear that the legislature intended each section in a "specific" manner and did not intend that, by presenting this type of evidence in mitigation, a defendant would be placing his or her character at issue, thereby opening the door for the Commonwealth to rebut on the issue of character.

The dissent, on the other hand, argues that our holding in *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), is controlling. The issue in *Goins* was whether a single felony conviction for a crime involving the use or threat of violence to the person may suffice to establish aggravating circumstance (d)(9). We held therein that such conviction would not suffice; finding that the Legislature intentionally used the plural form "convictions" to exclude a single conviction. The dissent would have us find that based upon our holding in *Goins,* the plural term "convictions" as used in (e)(1) should be construed to mean that a single prior conviction alone could not be used in *rebuttal* where a defendant asserts that he has no significant history of criminal convictions. However, I do not believe that the legislature intended that the aggravating and the mitigating circumstance of "no significant history" be interpreted in the same manner.

In construing the relevant statutes, and in ascertaining the intent of the General Assembly, we presume that the legislature did not intend a result that is either absurd or unreasonable. Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1). *See also, Goodman v. Kennedy,* 459 Pa. 313, 329 A.2d 224 (1974); *Lehigh Valley Co-op. Farmers v. Commonwealth, Bureau of Employment, Secretary, Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982). To extend our rationale in *Goins* to the facts of the instant case would clearly lead to an absurd result. Initially, I would note that the language employed in these two sections differs significantly. Aggravating circumstance (d)(9) employs the terms "felony convictions involving the use or threat of violence to the person," while mitigating circumstance (e)(1) employs the terms "prior criminal convictions."

Additionally, under the Sentencing Code, aggravating circumstances must be proved by the Commonwealth beyond a reasonable doubt, whereas mitigating circumstances must be proved by the defendant by only a preponderance of the evidence. 42 Pa.C.S. § 9711(c)(1)(iii). The verdict must be a sentence of death, however, if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance. 42 Pa.C.S. § 9711(c)(1)(iv). Thus, because one aggravating circumstance alone may mandate the imposition of the death penalty, the legislature in its wisdom, placed a higher burden on the Commonwealth to prove that the imposition of the most severe penalty possible is appropriate. In my view, therefore, our holding in *Goins* was correct; albeit not for the technical reason of its use of the plural "convictions," but because it is in keeping with the intended meaning of the statute and the legislative desire to ensure that a person with only one violent act in his past not be subjected to aggravating circumstance (d)(9).

Clearly, (e)(1) was designed for a wholly different purpose. It was created in order to provide the defendant with a potential life saving argument. But it would be absurd to conclude that in so doing, the legislature intended to deceive

or distort the true facts and thereby mislead the jury. The legislature could not have intended to afford a defendant who has a single prior conviction for rape, attempted murder or kidnapping for example, the opportunity to stand before the jury and inform them that he has "no significant history of criminal convictions" and thus, imply that he has a crime free past when, in fact, his prior history includes a single heinous crime. It would neither be reasonable to conclude that a defendant with two, three or five minor, non-violent convictions, be *precluded* from arguing to the jury that he or she has "no significant history of criminal convictions" based on the number of convictions alone. Rather, it is more reasonable to conclude that what the legislature intended was for the jury to determine what is and what is not "significant" when being offered a mitigating circumstance for its consideration. Because (e)(1) is not limited to prior convictions involving violence or threat to the person as is (d)(9), it is only reasonable to conclude that it was intended to provide a defendant who has a prior record the opportunity to argue in mitigation that he or she has no *significant* criminal history. However, in so doing, a defendant must bear the natural and reasonable consequence of his or her decision. Section (e)(1) could not have been designed to defraud the jury where a defendant in fact has a prior conviction. Therefore, the Commonwealth should be permitted to rebut with proof of the defendant's prior convictions, irrespective of whether the defendant's criminal history includes only a single conviction or more than one.

In *Commonwealth v. Lesko*, 502 Pa. 511, 467 A.2d 307 (1983), we reiterated the test for determining ineffectiveness of trial counsel as first stated by our Court in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). In *Lesko*, we stated:

"Initially, trial counsel is presumed to be competent, and his alleged ineffective actions must be evaluated to determine whether the strategy chosen is founded upon a **reasonable basis designed to further his client's inter-**

ests. (emphasis in original). We recently reaffirmed this test for determining ineffectiveness of trial counsel.

"The test of constitutional effective assistance of counsel is whether a particular course chosen by counsel has **some reasonable basis** designed to effectuate its client's interest. (Citations omitted) (Emphasis in original). The initial factor that is considered in applying this standard is whether the matters counsel is charged with failing to pursue had arguable merit. (Citations omitted)."

*Commonwealth v. Wade*, 501 Pa. 331, 461 A.2d 613 (1983). *See also, Commonwealth v. Upsher*, 497 Pa. 621, 444 A.2d 90 (1982); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).[5]

This rule is founded upon the inequity of finding trial counsel ineffective for pursuing a strategy which at the time appeared to be in his client's best interest.... Therefore, in reviewing trial counsel's strategy, we must place ourselves in the position of trial counsel at the time the strategy was formulated to determine if the alternatives chosen were reasonable."

Applying this standard, it is clear that counsel's decision not to pursue the mitigating factor of "no significant history of prior criminal convictions" pursuant to (e)(1) was reasonable and designed to protect appellant's interests. As discussed above, had counsel proceeded under (e)(1), the Commonwealth would have been permitted to rebut with proof of appellant's prior conviction. By employing the strategy he did, however, counsel succeeded in keeping from the jury, the fact of appellant's prior conviction which quite clearly would have prejudiced appellant. Counsel's actions cannot, therefore, be deemed to be ineffective. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Lesko, supra.*

5. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977) was reversed and remanded on other grounds. *See, Commonwealth v. Hubbard*, 485 Pa. 353, 402 A.2d 999 (1979).

ZAPPALA, Justice, concurring and dissenting.

I would uphold the conviction of the Appellant for murder of the first degree, robbery, burglary, and possession of an instrument of crime. I must dissent, however, from the majority's conclusion that trial counsel was not ineffective in failing to present evidence of the mitigating circumstance that the Appellant did not have a significant history of prior criminal convictions. I would vacate the death penalty and remand for a new sentencing hearing pursuant to 42 Pa.C. S.A. § 9711(h)(4).

Appellant contends that trial counsel was ineffective in failing to present evidence during the penalty phase to establish the mitigating circumstance that "[t]he defendant has no significant history of prior criminal convictions." 42 Pa.C.S.A. § 9711(e)(1). The majority rejects this argument, finding that it "... is erroneously premised on the fact that his single prior conviction for robbery would not have been admissible if offered by the prosecution to rebut the evidence that Appellant did not have a significant history of prior criminal convictions." (Majority opinion at 870). I do not agree that the Appellant's argument is founded on a faulty premise.

The majority holds that a single prior criminal conviction is admissible to rebut the mitigating circumstance that the defendant does not have a significant history of prior criminal convictions. This conclusion is absolutely unsupportable; indeed it is directly refuted by our analysis in *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985).

In *Goins*, the issue presented was whether a single felony conviction for a crime of violence may suffice to establish the aggravating circumstance that "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S.A. § 9711(d)(9). We held that it may not, finding that the Legislature intentionally used the plural form "convictions" to exclude a single conviction. We stated,

* * * "Words and phrases shall be construed according to rules of grammar and according to their common and

approved usage....". 1 Pa.C.S. § 1903. Following this precept, it is important to note that the statute reads "a significant history of felony convictions" rather than "a history of significant felony convictions." The pertinent rule of grammar to be followed is that that modifier should be placed, if possible, next to the word to be modified. If the legislature had intended that the seriousness of the prior felonies be the measure of the aggravating circumstance, the latter construction would have been correctly used. The use of the former construction instead clearly demonstrates the intention that it be the defendant's "history of felony convictions which is significant." *In this context it appears that the plural form "convictions" is intentionally used to the exclusion of the singular form "conviction."*

508 Pa. at 283, 495 A.2d at 534 (Emphasis added).

This Court's analysis in *Goins,* supra, is controlling in the instant case. Although *Goins* involved an interpretation of the phrase "significant history of felony convictions" in the context of the aggravating circumstance set forth in 42 Pa.C.S.A. § 9711(d)(9), its reasoning compels the same conclusion in interpreting § 9711(e)(1). The phrase which appears in 42 Pa.C.S.A. § 9711(e)(1) as the mitigating circumstance is that the defendant has no "significant history of prior criminal convictions." Again, it is clear that the Legislature intentionally used the plural form "prior criminal convictions" to the exclusion of the singular form "conviction."

The majority attempts to distinguish the instant case from *Goins,* supra, by relying upon *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984). Footnote 4 in *Szuchon* is cited as authority for the proposition that a single prior criminal conviction is admissible to rebut the mitigating circumstance that the defendant does not have a significant history of prior criminal convictions. It simply is not.

In *Szuchon,* the Commonwealth sought the death penalty on the theory that two aggravating circumstances existed

which outweighed any mitigating. The aggravating circumstances included (1) the defendant committed a killing while in the perpetration of a felony, 42 Pa.C.S.A. § 9711(d)(6), and (2) in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S.A. § 9711(d)(7). The Commonwealth did not introduce any evidence to establish that the defendant had a significant history of felony convictions within 42 Pa.C.S.A. § 9711(d)(9).

In *Szuchon,* it was the defendant himself who introduced his prior plea of guilty to a charge of robbery as evidence of the mitigating circumstance that he had no significant history of prior criminal convictions. The defendant also argued the existence of three other mitigating circumstances: (1) he was under the influence of extreme mental or emotional disturbance; (2) his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and (3) the influence of drugs and alcohol upon his behavior. 42 Pa.C.S.A. § 9711(e)(2), (3), and (8), respectively. The jury returned a verdict of death, finding that the aggravating circumstances outweighed any mitigating circumstances.

In footnote 4 of the *Szuchon* opinion, the Court stated:
It was placed on the record that appellant entered a plea of guilty to a charge of robbery in 1974. The court, correctly, left it to the jury to determine whether or not this constituted a "significant history of prior criminal convictions."

This footnote followed the recitation of the list of mitigating circumstances that the defendant had argued for before the jury. Very clearly, then, the footnote refers to the fact that the trial court permitted the jury to consider the defendant's record of a single prior criminal conviction as evidence of the *mitigating* circumstance that the defendant had no significant history of prior criminal convictions.

The question of whether a single prior criminal conviction is admissible to *rebut* the mitigating circumstance that the

defendant does not have a significant history of prior criminal convictions was never an issue in *Szuchon.* It was the defendant, and not the Commonwealth, who introduced the evidence of the prior conviction. The evidence was introduced not to rebut the mitigating circumstance, but to prove it.

It is anomalous, therefore, that the majority relies upon footnote 4 in *Szuchon* to establish its conclusion in the instant case that a single prior conviction is admissible to rebut the mitigating circumstance. Even if one's imagination could stretch the language of footnote 4 to suggest such a result, this Court's subsequent decision in *Goins,* supra, removes all doubt that a single prior conviction will not suffice to rebut the mitigating circumstance that speaks in terms of "prior criminal convictions."

The majority author's own dissenting opinion in *Goins* acknowledges that footnote 4 of *Szuchon* (also written by the majority author) is dictum and of no precedential value:

> The majority's interpretation of subsection (d)(9) would also seem to conflict with this Court's recent decision in *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365 (1984). In that case, a majority of this Court stated (albeit in dictum) that it was proper for the lower court to leave it to the jury to determine whether or not a defendant with a single prior conviction for robbery could be considered to have "no significant history of prior criminal convictions" under subsection (e)(1).

508 Pa. at 290, 495 A.2d at 537, footnote 3 (Larsen, J. dissenting). To the extent that *Szuchon* might have been interpreted as the majority does so today, such an interpretation was clearly rejected by our analysis in *Goins.* The majority's interpretation is nothing more than an attempt to overrule *Goins.*

Since the publication of the *Goins* opinion, the Legislature has amended the death penalty statute. Conspicuously absent from the amendments are any changes in the language of the aggravating circumstance of § 9711(d)(9), which *Goins* specifically addressed, or the mitigating cir-

cumstance of § 9711(e)(1).[1] Under the principles of statutory construction, "... when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S.A. § 1922(4).

Because the majority erroneously concludes that the Appellant's single prior conviction would have been admissible if offered by the prosecution to rebut the evidence that the Appellant did not have a significant history of prior criminal convictions, the claim of ineffectiveness of trial counsel has merit. The majority finds that trial counsel's decision not to present evidence of this mitigating circumstance was one reasonably designed to effectuate his client's interest. The majority relies upon the prosecutor's and defense counsel's inchambers discussion with the trial judge prior to the penalty phase to support its conclusion.

The majority reasons that if defense counsel had introduced evidence to prove that mitigating circumstance, he would have opened the door for the introduction of Appellant's prior conviction. I have stated at length the reason why that conclusion is erroneous under the language of the statute and our holding in *Goins,* supra. It is erroneous as well because the record demonstrates that defense counsel's purpose in arguing against the Commonwealth's use of that conviction during the inchambers discussion was different than that suggested by the majority's opinion.

During the in-chambers discussion, the trial judge requested that counsel for both sides discuss their respective positions on the admissibility of evidence during the penalty phase. Defense counsel indicated that he intended to present one witness to testify about the Appellant's activities in the community for a period of two years—from 1982 to 1984. Those activities included the Appellant's participation in a community dance and drama group and his involvement in dance, theatre, and guitar lessons for chil-

---

**1.** The Legislature did amend the provision of the death penalty statute relating to aggravating circumstances by adding other circumstances.

dren in the community. Defense counsel indicated that the testimony would be offered as "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.C.S.A. § 9711(e)(8).

Defense counsel stated that he did not intend the evidence to reflect on his client's reputation in the community for non-violence or honesty. For that reason, he objected to any use of the prior criminal conviction by the Commonwealth to rebut the mitigating circumstance of § 9711(e)(8). N.T. at 842. The focus of defense counsel's objection was entirely different from the purpose stated in the majority's opinion.

The prosecutor argued that the evidence would be admissible to rebut the mitigating circumstance of § 9711(e)(8) and that it would be admissible to show the Appellant was not community oriented. The trial judge ruled that the evidence would not be admissible *for that purpose,* stating:

THE COURT: I will rule that the Commonwealth may not cross-examine or prove the defendant's prior conviction. I will caution you, Mr. Stein, that I expect the witness to testify as you have said and the defendant's actions in a period from 1982 to 1984 in this acting group or with regard to what he did with musical lessons provided free of charge and his actions that he had taken with regard to his son in providing financial support and taking an interest in the child doesn't in my judgment allow the Commonwealth to introduce that prior conviction. However, if this witness on direct examination volunteers that he has never been in any trouble or has always been a model, law abiding citizen or does anything that I think unfairly portrays the defendant in a light that would allow this conviction, then I may consider that the door has been opened. I also would tell counsel that while obviously Mr. McMahon understands if I don't allow it into evidence, he can't argue on it, nor can you

argue that the defendant has never been in trouble before or has a spotless record before this.

N.T. pp. 850–851.

Having been successful in securing a ruling from the trial court that the prior conviction could not be used to rebut the evidence of the mitigating circumstance of § 9711(e)(8), defense counsel's failure to argue for the mitigating circumstance that the Appellant had no significant history of prior criminal convictions was not a reasonable trial strategy. I would find that defense counsel was ineffective for that reason and note that the prejudice to the Appellant in this death penalty case is self-evident.

In his concurring opinion, Justice Flaherty attempts to distinguish this case from *Goins,* stating "... there is quite a difference between the Commonwealth asserting a statutorily defined aggravating circumstance and its ability to rebut the obvious inference created by the mitigating circumstance in question." Such a distinction might be a valid one in a case in which evidence of the defendant's character is introduced to establish his reputation in the community for non-violence or honesty, but that was not the evidence that was introduced in this case. Therefore, Justice Flaherty's reliance upon that distinction is unsupported by the record.

During the penalty phase, the only evidence of mitigating circumstances introduced by defense counsel was the testimony of Stacy Williams, the Appellant's former girlfriend. N.T. pp. 858–869. Miss Williams testified that she had met the Appellant in the summer of 1982 while working at a Philadelphia YWCA. The YWCA had formed a theatre company for teenagers in the area and had provided jobs to area teenagers by creating internships for dance, drama, and theater. The Appellant had been placed as a YWCA intern as part of a city project to develop summer jobs for teens.

As part of that program, the Appellant attended dance and drama classes. He was later given a teaching position in those subjects. He continued to participate in theatrical

productions after the funding for the program was gone. The theater group subsequently moved to a community center under an arrangement to exchange lessons to community children for space. The Appellant was one of the teachers until the group disbanded in 1984.

Miss Williams testified that he was a very good teacher and that the children liked him. During the time they were involved in the theater group, Miss Williams and the Appellant became personally involved. They have a son, who was four years old at the time of the hearing.

Miss Williams testified that the Appellant had contact with his son, that he had made support payments voluntarily, and that she thought he was a very good father. She testified that the Appellant was 24 years old. Defense counsel introduced two pictures of the Appellant with his son as exhibits. That was the extent of the direct examination. The prosecutor's cross-examination of the witness was short and insignificant. No other evidence of mitigating circumstances was introduced.

In his concurring opinion, Justice Flaherty states that "The defendant, by electing to submit such a mitigating circumstance is in effect making his character an issue and must expect the rebuttal which normally follows." If any of the members of the majority can see in that testimony a basis for introducing evidence of a single prior conviction as rebuttal evidence, then all of our law relating to the scope of cross-examination and relevance and materiality of testimony has been abandoned in death penalty cases. The clear import of the Appellant's evidence of mitigating circumstances was not to create an image of sterling character, but, simply, to suggest to the jury that the Appellant had demonstrated some positive qualities in his life that should be considered when determining whether the Appellant would be sentenced to die.

I dissent.

NIX, C.J., joins in this opinion.