J-S56011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM BASEMORE | : | |
| | : | |
| Appellant | : | No. 2641 EDA 2019 |

Appeal from the PCRA Order Entered August 13, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0317611-1987

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 16, 2021**

Appellant, William Basemore, appeals from the post-conviction court's August 13, 2019 order, dismissing as meritless his timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court set forth the relevant background of this case as follows:

On the night of December 23, 1986, [Appellant], a recently fired former employee, broke into the Riverfront Dinner Theater by removing slats from a window in the men's room.  [Appellant] was armed with a variety of martial arts weapons, including a knife, a nearly 4–foot homemade spear secured with black electrical tape, and a four-point throwing star attached to a yellow rope, as well as a cutting torch and other tools for cutting into a safe.  In the theater, he confronted the elderly security guard, George Weiss, and stabbed him multiple times, killing him.  He then used a cutting torch, fueled by oxygen and acetylene, to burn a hole into the top of the safe in the sales room.  The safe caught fire and was doused with water.  From the safe, [Appellant] removed cash

---

[*] Retired Senior Judge assigned to the Superior Court.

and imitation gold coins inscribed with the company's name (these were sold as gift certificates by the dinner theater). Weiss was found dead the next morning in the sales office, with a blood-stained knife entangled in his clothing. Police also discovered the acetylene and oxygen tanks, the spear, martial arts throwing star, charred money, a charred empty box labeled "gold coins gift certificates," a wrench, safety goggles, and a striker used for lighting welding torches. In the men's room, police found a chair under the window and underneath it was a mesh-type sling made from yellow synthetic rope held together with black electrical tape. *See Commonwealth v. Basemore*, [582 A.2d 861] ([Pa.] 1990).

The police traced the serial numbers on the fuel tanks to a local company that sold this type of equipment. The business records showed that [Appellant] bought the acetylene bottles on November 24, 1986[,] and the oxygen tank on December 10, 1986, which he took to the store for repair the very next day. The martial arts weapons recovered from the scene were traced to Asian Martial Arts World store, where employees identified [Appellant] from a photo array as the customer who purchased these items. Police then executed a search warrant and arrest warrant at [Appellant's] home. When police arrived, [Appellant] claimed he was his sister's boyfriend and that he hadn't seen "William Basemore" since 3 a.m.[,] when he was asleep on the couch. The police, however, noticed [Appellant's] distinguishing scar on his left forearm and placed him under arrest. [Appellant] then blurted out that "he worked at the Riverfront and there's lots of shit going down there and he wanted to tell [the police] about it." While searching [Appellant's] bedroom, police recovered two shoe boxes underneath [Appellant's] bed containing imitation gold coins from the theater, a receipt dated December 10, 1986[,] for the purchase of an oxygen tank, a wallet containing [Appellant's] identification card as well as more imitation gold coins, and $90 in charred US currency. In his mother's bedroom, police found several knives wrapped in newspaper and yellow cord. In the basement, police found a multitude of martial arts weapons, including a homemade spear and throwing star on a yellow cord that were identical to those found at the crime scene. Police also found bloodstained coveralls that were later tested; the blood was consistent with the decedent's blood type. [*Id.*] at [865]. Prior to the second trial, these samples were tested for DNA. A partial DNA profile was recovered from a blood stain on the coveralls and

this profile was consistent with the decedent's DNA profile. (N.T.[,] 4/3/03, … 48).

Based upon this overwhelming evidence of guilt, on May 3, 1988, a jury found [Appellant] guilty of first-degree murder, robbery, burglary, and possession of an instrument of crime. On May 4, 1988, the jury unanimously voted to sentence him to death. [Appellant] appealed his judgment of sentence. It was affirmed by the Pennsylvania Supreme Court on November 16, 1990. Subsequently, [Appellant] filed a PCRA petition and was awarded a new trial after a video surfaced showing Jack McMahon, Esquire (the prosecutor at [Appellant's] original trial), recommending striking prospective jurors based upon racial stereotypes. [*See Commonwealth v. Basemore*, 744 A.2d 717 (Pa. 2000).] At [Appellant's] second jury trial, the jury found [Appellant] guilty of first[-]degree murder and related offenses. He was sentenced to life in prison on November 19, 2003. The Superior Court affirmed this conviction[, *Commonwealth v. Basemore*, 875 A.2d 350 (Pa. Super. 2005),] and on March 7, 2006, the Pennsylvania Supreme Court denied his petition for allowance of appeal. [*Commonwealth v. Basemore*, 895 A.2d 548 (Pa. 2006).]

On February 5, 2007, [Appellant] filed his first PCRA petition following retrial. On October 21, 2011, while awaiting counsel to be appointed, [Appellant] filed an additional PCRA petition. On October 4, 2017, this matter was reassigned to this [c]ourt. On October 5, 2017, David Rudenstein, Esquire[,] was appointed [as] PCRA counsel. On March 11, 2017, counsel filed an Amended Petition. On September 5, 2018, the Commonwealth filed its Motion to Dismiss. On February 20, 2019, counsel filed a Supplemental Petition.[1] On June 10, 2019, the Commonwealth file[d] its Reply to the Supplemental Petition. On June 10, 2019, this [c]ourt sent [Appellant] a Notice of Intent to Dismiss Pursuant to [Pa.R.Crim.P.] 907. On July 16, 2019, [Edward J.] Foster,

_____

[1] In that supplemental petition, Attorney Rudenstein mentioned that, "[w]hen we were last in [c]ourt, [the PCRA court] expressed some concern that I had not thoroughly reviewed the file and you directed me to do so. I have done so." Supplemental Petition, 2/20/19, at 1 (unnumbered). Then, therein, Attorney Rudenstein purported "to give more explanation" for his conclusions. *Id.*

Esquire[,] entered his appearance as PCRA counsel.[2] On August 12, 2019, [Attorney] Foster filed a reply to the [Rule] 907 Notice.[3, 4] On August 13, 2019, this [c]ourt dismissed [Appellant's] petition based upon lack of merit. On September 11, 2019, [Appellant] filed a Notice of Appeal to [the] Superior Court.[5]

PCRA Court Opinion (PCO), 12/30/20, at 1-4 (some brackets in original).

Presently, Appellant raises a single issue for our review:

Whether the court abused its discretion in dismissing the PCRA [petition] after having previously admonished [prior,] court[-]appointed counsel for not thoroughly reviewing the file and requiring him to prepare further filings, which contained factual errors and demonstrated no further knowledge of the case.

_____

[2] Though Attorney Foster did not enter his appearance until July 16, 2019, he "was present in court for the formal dismissal [of Appellant's petition on July 10, 2019,] and requested that [the PCRA court] hold off on dismissing the petition and grant a brief period of time [for him] to enter his appearance and to get up to speed on the case and respond to the [Rule] 907 letter, which [the PCRA] court kindly granted." Response to Rule 907 Notice, 8/12/19, at 2 (unnumbered). The docket reflects that the PCRA court continued the formal dismissal proceeding until August 12, 2019, and in that docket entry stated "[n]o further [c]ontinuances." Docket Entry No. 122 (dated 7/10/19).

[3] In that reply, Attorney Foster requested that the PCRA court "withdraw the [Rule] 907 intent to dismiss letter and allow [him] sufficient time to fully review all of the evidence in this case, all of the notes of testimony from both trials, and have a full discourse with [Appellant,] so as to allow the preparation of a fully fleshed out[] amended petition for relief pursuant to the [PCRA]." Response to Rule 907 Notice at 2 (unnumbered). Therein, he specifically asked the PCRA court to grant Appellant a 90-day extension to supplement his petition. *Id.* at 1.

[4] Attorney Foster also attended the formal dismissal proceeding on August 12, 2019.

[5] The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and it filed a Rule 1925(a) opinion. Though the PCRA court did not address the issue Appellant raises on appeal in its Rule 1925(a) opinion, we can determine the basis for its decision regarding that issue from the record.

Appellant's Brief at 6.

Appellant argues that he "was not afforded adequate PCRA representation and that the court abused its discretion in not allowing newly[-]retained counsel to review the case, the evidence, and the claims being made by … Appellant to assist him in what may be one of his last chances to overturn what he claims to be a wrongful conviction of an innocent man." *Id.* at 9.  His entire argument on this issue consists of the following:

> Appellant was not afforded adequate, effective representation at the PCRA level and a fact that is really driven home by the fact [*sic*] that [the PCRA court] had to order [prior,] court[-]appointed PCRA counsel to go back and do another review of the file at a hearing on November 20, 2018.  In [its] opinion[,] [the PCRA court] really [drove] home [its] belief that the evidence against Appellant was overwhelming and that the issues raised in the PCRA petition lacked merit.  However, the argument here is that this case should never have reached a determination on the merits as the record clearly reflects that the handling of this PCRA was wholly inadequate from just about every standpoint possible.

> The *pro se* petition was filed in 2007[,] and it sat without any review or any attention whatsoever for two years before being targeted by the court for Initial Review Status in May of 2009[,] after Appellant filed an amended petition that February.  It then sat for another two years before Appellant decided to file a subsequent amended petition on October 21, 2011.  The petition then sat untouched by the courts again for another six years until finally on October 5, 2017[,] Mr. Rudenstein was appointed as PCRA counsel.  Putting this in perspective, George W. Bush was the President of the United States a little over half way through his second term when the PCRA [matter] was initiated, Barrack Obama served the eight years of his [p]residency, and Donald Trump was wrapping up the first year of his [p]residency by the time counsel was appointed and this PCRA [matter] got some attention from the courts.  What's the relevance of all of this?  On August 11, 2019[,] undersigned counsel filed a [Rule] 907 response, which simply present[ed] the known inadequacies of the representation of Mr. Rudenstein and made one simple

request, a withdrawal of the [Rule] 907 dismissal and sufficient time to adequately and effectively review all the claims raised by … Appellant in his *pro se* petition. The *pro se* petition that Appellant spent twelve years waiting for his day in court [*sic*] and [the PCRA court] felt that he couldn't be afforded another ninety or so days[,] so that a genuine investigation of the issues he raised as well as his claims of actual innocence [*sic*].

Appellant's Brief at 9-10.

We wholeheartedly agree with Appellant that the delay in this case, apparently caused by the PCRA court (although not the current judge assigned to the matter), is unreasonable and inexcusable. However, "[t]he decision to grant a continuance is within the sound discretion of the [lower] court, and we will reverse only if the court has abused its discretion." **Commonwealth v. Paddy**, 15 A.3d 431, 470 (Pa. 2011) (citations omitted). Here, Appellant has not demonstrated that the PCRA court abused its discretion.

To begin, after continuing the formal dismissal proceeding until August 12, 2019, the PCRA court warned Appellant in its July 10, 2019 docket entry that there would be "[n]o further [c]ontinuances." Docket Entry No. 122 (dated 7/10/19). In addition, our review of the transcript from the August 12, 2019 formal dismissing proceeding shows that the following occurred there:

[Court Crier]: You Honor, [Attorney] Foster is here on Case No. 5, William Basemore, PCRA.

[Attorney Foster]: Good morning, Your Honor.

[PCRA court]: Good morning.

[Attorney Foster]: Edward J. Foster for William Basemore. I did file this [response to the Rule 907 notice] this morning, Your Honor. I just passed a copy to the [Commonwealth]. This was here today for a formal dismissal on the – after the 907 letter that went out in June.

(Brief pause.)

[PCRA court]: Okay. I have, again, reviewed the documents in this case. [Appellant] submitted a letter today – filed today [*sic*] asking for more time to additionally supplement [Appellant's] counsel[ed] PCRA petition. And after review of the documents again, I am going to deny that request. I did[,] back on July 10th[,] allow [Appellant's] counsel to enter [his appearance]. I gave him 30 days then to … file any additional supplements that he wished, but I'm not going to give this any more continuances. This case is quite old.

[Attorney Foster]: I understand, Your Honor.

N.T., 8/12/19, at 3-4. Aside from referencing his response to the Rule 907 notice, Attorney Foster did not make any specific argument in support of an extension of time at the proceeding, nor did he mention what kind of claim Appellant hoped to raise by supplementing his counseled petition.

Further, the Commonwealth persuasively observes that,

the PCRA [c]ourt did more than afford [Appellant] the twenty days['] notice contemplated by the rules of procedure before dismissing his petition. Pa.R.Crim.P. 907. Rather, after the twenty days had passed, the court waited another ten days and then granted counsel an additional thirty days beyond that to file a response. But counsel remained silent until after the new deadline had come and gone. Moreover, even when he belatedly filed a letter with the court asking for still more time, he did not make an offer of proof or even identify a particular claim of potential merit that he wished to explore in greater detail. Accordingly, one cannot say that the court exceeded the limits of its discretion by denying that request.

In his brief, [Appellant] does not cite a single case in support of his appellate argument. Instead, he asserts in boilerplate fashion that his prior PCRA counsel's representation was "wholly inadequate from just about every standpoint possible" (Brief for Appellant[ at] 9). That claim is not sufficiently developed to show that prior PCRA counsel's performance was actually deficient, much less that any possible deficiency prejudiced [Appellant] by forfeiting some underlying meritorious claim of ineffective assistance on trial counsel's part. ***See, e.g.***, ***Commonwealth v.***

- 7 -

> ***Bond***, 819 A.2d 33, 39-40 (Pa. 2002) (rejecting generalized allegations of ineffective assistance on collateral review).
>
> [Appellant] also notes that an inordinate delay occurred between when he filed his original *pro se* PCRA petition and when prior PCRA counsel was appointed (Brief for Appellant[ at] 9-10). While that is troubling, it has no bearing on the instant claim. The fact that this litigation has gone on for too long is not reason to extend it further.

Commonwealth's Brief at 7-9.

We agree with the Commonwealth's argument. Most problematically, Appellant does not indicate what particular claim of potential merit he hoped to pursue by supplementing his petition. He also provides no legal authority in support of his argument that the PCRA court abused its discretion in denying him a continuance. ***Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. … This Court will not act as counsel and will not develop arguments on behalf of an appellant."). Thus, based on the foregoing reasons, we discern no abuse of discretion by the PCRA court in denying Appellant's request for a continuance. Consequently, we affirm the PCRA court's order dismissing his petition for lack of merit.[6]

Order affirmed.

---

[6] Appellant does not make any argument regarding the merits of his petition and, therefore, we do not address them.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2021