J-S17004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVON MARCUS | : | |
| | : | |
| Appellant | : | No. 1319 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 10, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005658-2022

BEFORE: MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY MURRAY, J.:           **FILED JUNE 3, 2025**

Devon Marcus (Appellant) appeals from the judgment of sentence imposed following his convictions by a jury of persons not to possess firearms and firearms not to be carried without a license.[1] Appellant claims the trial court erred when it denied his pretrial motion to suppress evidence, and subsequently made certain improper rulings at trial. After careful review, we affirm.

The trial court summarized the evidence adduced at Appellant's suppression hearing as follows:

On November 18, 2022, Chester Township Police Officer[] Andrew Fridley [(Officer Fridley or the Officer) was] on patrol in full uniform in a marked police vehicle in [Brookhaven, Pennsylvania, in] the area of Toby Farms, 1100 block of Powell Road, a known high[-]crime area. N.T., 3/6/23, at 7-10. At app[roximately]

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1).

11:07 p.m.[, Officer Fridley] observed a Jeep [(vehicle or the Jeep)] exiting a [convenience store] parking lot at a high rate of speed, turning on[]to Bridgewater Road without stopping at all or yielding to oncoming vehicles. *Id.* at 10-11. [Officer Fridley] observed the vehicle travel over the double yellow lines, with no obstructions or other vehicle[s] in his lane of travel. *Id.* at 11.

The vehicle had a [Carvana] license tag with no apparent state of origin, thus preventing the [O]fficer from determining whether the vehicle's registration was valid. *Id.* at 11-12. [] Officer [Fridley] initiated a traffic stop. *Id.* at 12. Upon approaching the subject vehicle, [Officer Fridley] noticed [that Appellant] was the driver. *Id.* at 13[; *see also id.* (Officer Fridley stating there was a front-seat passenger in the vehicle, Rasheen Sanders (Ms. Sanders))]. The Officer also noted [that Appellant] was very nervous and was abnormally shaking while handing his driver's license to the Officer. *Id.* at 14.

The Officer ran a records check on [Appellant's] drivers' license and noted that [Appellant] was on state parole for aggravated assault with a firearm. *Id.* While the Officer was running the license check, he [could see into the vehicle and] noticed [Appellant] bend down towards the floor of [the] vehicle more than once, and lift[] himself back up while he was looking at the police vehicle in his rear[]view mirror. *Id.* at 15.

After running [Appellant's] license, the Officer re-approached the vehicle and requested [that Appellant] exit the vehicle. *Id.* As the Officer requested [Appellant] to exit, [Appellant] continued to make random movements inside the vehicle that the Officer was unable to see what [Appellant] was doing. *Id.* at 16. [Appellant's] right hand went out of view a couple of times. *Id.*

Then, the Officer opened the driver's door and guided [Appellant] from the vehicle. *Id.* Using a flashlight, the Officer was able to see inside of the vehicle and immediately observed a firearm on the driver's side floor. *Id.* at 17. The Officer observed the entire gun while he was standing in the street at the driver's door opening, peering into the vehicle. *Id.* At the time the gun was observed, no part of the Officer's body was inside of the vehicle. *Id.* at 48. The gun was secured and made safe [by the Officer]. *Id.* at 18.

Trial Court Opinion, 8/1/24, at 1-2 (citations, punctuation, and formatting modified).

Following Appellant's arrest, the Commonwealth charged him with persons not to possess firearms, firearms not to be carried without a license, and summary traffic offenses. On February 9, 2023, Appellant filed a motion to suppress the firearm police found in the vehicle through private counsel, Patrick A. Scanlon, Esquire (trial counsel). Appellant claimed police unlawfully seized the firearm, where (1) "Officer Fridley lacked probable cause and exigent circumstances to justify a warrantless search"; (2) the "firearm was not in plain view"; and (3) "there was no justification for a protective sweep search[.]" Motion to Suppress, 2/9/23, at 2, 4 (unpaginated) (capitalization modified).

The suppression court held a suppression hearing on March 6, 2023, wherein Officer Fridley testified as the sole witness. On April 6, 2023, the Commonwealth filed a response in opposition to Appellant's motion to suppress. The Commonwealth claimed Officer Fridley lawfully (1) directed Appellant to exit the vehicle as a safety precaution; and (2) seized the firearm pursuant to the "plain view" exception to the warrant requirement, which we discuss *infra*. **See generally** Response, 4/6/23.

On April 10, 2023, the suppression court denied Appellant's motion to suppress. Order, 4/10/23. The court subsequently issued findings of fact and conclusions of law in connection with its denial of the suppression motion.

*See generally* Order/Findings of Fact and Conclusions of Law, 4/19/23. The court specifically "found the testimony of [] Officer [Fridley] to be credible," *id.* at 3, and determined that his

> testimony … supports a finding that he had probable cause to believe that [Appellant] … violated the Motor Vehicle Code. Officer Fridley testified that he saw [Appellant's] vehicle being driven erratically, and the validity of the license plate could not be verified. Accordingly, the stop of the vehicle was lawful.

*Id.* at 4 (formatting and capitalization modified). The court further concluded that the warrantless seizure of the firearm was permitted under the plain view doctrine. *See id.* at 5-6.

On April 24, 2023, Appellant filed a motion for reconsideration of the denial of his suppression motion. The suppression court conducted a brief hearing on the motion for reconsideration on May 1, 2023, and considered argument from the parties. Four days later, the court denied the motion for reconsideration.

The matter proceeded to a jury trial in February 2024. The Commonwealth presented testimony from several witnesses, including Officer Fridley and Chester Township Police Officer Michael Strofe (Officer Strofe). Shortly after initiating the traffic stop, Officer Fridley called for backup, and Officer Strofe responded to the scene in his marked police cruiser. N.T., 2/27/24, at 174-75. Officer Strofe arrived prior to Appellant's removal from the vehicle. *Id.* at 175. Officer Strofe testified that after Appellant exited the vehicle and Officer Fridley observed and seized the firearm, "[Appellant]

indicated in front of myself and Officer Fridley that the firearm was his[.]" ***Id.*** at 180. Officer Strofe further testified that Appellant did not have a license to carry a firearm at the time of his arrest. ***Id.*** at 190-91; ***see also*** N.T., 2/29/24, at 86 (the parties stipulating to same).

On cross-examination of Officer Strofe, trial counsel sought to question him regarding Officer Fridley's six-month suspension from the police force between May 2023 and December 2023, following Officer Fridley's guilty plea to an unspecified summary offense in an unrelated case.[2] N.T., 2/27/24, at 211, 213-14. The prosecutor objected that such evidence was irrelevant to the instant case, could confuse the jury, and was unduly prejudicial to the Commonwealth's case.[3] ***Id.*** at 211-13. Following a sidebar discussion, the trial court sustained the Commonwealth's objection. ***Id.*** at 214. However, the court permitted trial counsel to elicit testimony from Officer Strofe that he had to take over the investigation in this case from Officer Fridley, who was "temporarily … not employed" by the police department. ***Id.*** at 214-15.

---

[2] Though the record is unclear, it appears that Officer Fridley was charged with simple assault in an unrelated case, and ultimately pled guilty to a summary offense.

[3] Neither party filed a motion *in limine* concerning evidence of Officer Fridley's suspension. ***See*** N.T., 2/27/24, at 213 (trial court stating at trial, "unfortunately, somebody didn't file a motion on [the admissibility of Officer Fridley's suspension]. Now you're hitting me [] totally cold at five o'clock. I know nothing about this.").

On the next day of trial, Officer Fridley testified consistent with his testimony from the suppression hearing. He further testified that between May and December of 2023, he was absent from the police department. N.T., 2/28/24, at 24. During the Officer's absence, his cases were handled by other officers, and the instant case was assigned to Officer Strofe. *Id.* at 25.

Trial counsel cross-examined Officer Fridley about his leave of absence as follows:

> Q. [(trial counsel):] … Now officer, you testified that you took a leave of absence beginning [] May of 2023 and into December, 2023. Is that accurate?
>
> A. [(Officer Fridley):] Yes.
>
> Q. That was not a voluntary leave of absence, was it?

*Id.* at 44. The prosecutor objected and the trial court sustained the objection. *Id.*; *see also id.* at 45 (trial court cautioning the jury: "There was an objection made to that question. I sustained the objection and that means you're not allowed to consider that question.").

Appellant testified on his own behalf at trial,[4] after a thorough colloquy. *See generally* N.T., 2/28/24, at 116-41. At the conclusion of trial, the jury considered the parties' respective closing arguments. During trial counsel's

_____

[4] At Appellant's bifurcated trial, he testified only in the portion of the trial related to the charge of firearms not to be carried without a license. After the jury returned a guilty verdict on that charge, the jury considered the parties' stipulation that Appellant's criminal history rendered him ineligible to possess a firearm. The jury then deliberated on the charge of persons not to possess, and returned a guilty verdict.

closing, Appellant interrupted and repeatedly "object[ed]." N.T., 2/29/24, at 6. The trial court paused the proceedings and addressed the matter at sidebar, wherein trial counsel clarified that Appellant desired to personally address the jury. *Id.* at 9. The prosecutor responded, "I'm not going to let [Appellant] sabotage this trial [b]ecause he thinks he's going to lose and he's trying to make a mistrial out of this." *Id.* at 6-7. Following the sidebar, the trial court gave the jury a cautionary instruction, discussed *infra*, and advised the jury not to consider Appellant's outburst. *Id.* at 9-10.

The trial court cautioned Appellant not to interrupt the proceedings again. *Id.* at 10. Immediately thereafter, however, Appellant interrupted the proceedings, stating multiple times, "I would like to object." *Id.* Trial counsel then moved for a mistrial "based on [Appellant's] conduct during closing argument[.]" *Id.* at 11. The trial court denied the mistrial motion. *Id.* at 11, 12. The court repeatedly warned Appellant that if he continued to interrupt, he would be removed from the courtroom. *Id.* at 18-19. Appellant persisted with his courtroom misconduct, stating, "I'm still going to interrupt." *Id.* at 18. The court paused the proceedings and ordered Appellant's removal to a different room, which displayed simultaneous audio and video of the courtroom proceedings. *Id.* The jury convicted Appellant of the above-mentioned firearms offenses.[5] *Id.* at 85, 125.

_____

[5] Before the conclusion of trial, the Commonwealth withdrew all charges related to Motor Vehicle Code violations.

On May 10, 2024, the trial court sentenced Appellant to an aggregate 6 to 12 years in prison. Appellant did not file post-sentence motions.

Appellant timely filed a notice of appeal on May 13, 2024.[6] Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents four issues for our review:

1. Whether the trial court erred when it denied the motion for suppression where the Officer conducted the vehicle search without a warrant or probable cause and exigency[,] in violation of []Appellant's rights as guaranteed to him by Article 1, Section 8 of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments to the United States Constitution?

2. Whether the trial court erred when it limited [trial] counsel's cross[-]examination impeachment questions of the arresting officer in this case, by not permitting [trial] counsel to question [the] Officer about his suspension from the force, when the actions of the Officer were at issue in this case, all in violation of Appellant's constitutional rights as guaranteed to him by Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment to the United States Constitution, resulting in [] substantial prejudice to Appellant?

3. Whether the trial court erred when it denied [trial] counsel's request for a mistrial after [] Appellant's repeated outburst[s] before the jury, in violation of Article 1, Section 9 of the Pennsylvania Constitution and the Sixth Amendment to the United States Constitution?

4. Whether the trial court erred when it failed to *sua sponte* halt the jury trial proceedings and engage in a sufficient inquiry as to Appellant's competency to proceed and competency to assist

_____

[6] Contemporaneously with Appellant's notice of appeal, trial counsel filed a petition to withdraw as counsel, emphasizing that Appellant had not retained trial counsel's services for further proceedings. Petition to Withdraw, 5/13/24, ¶ 7. The trial court granted trial counsel permission to withdraw and appointed the Delaware County Public Defender's Office to represent Appellant, which also represents him on appeal. Order, 5/17/24.

his counsel after Appellant's repeated outbursts before the jury, continued arguing with the trial court and nonsensical request to testify while the jury was in deliberation[, after] having waived his right to testify in the final phase of the trial?

Appellant's Brief at 5-6 (footnote omitted; capitalization modified).

In his first issue, Appellant claims the trial court improperly denied his motion to suppress, where Officer Fridley unlawfully seized the firearm from the vehicle without a search warrant, establishing any exception to the warrant requirement, or exigent circumstances. *See id.* at 18-24.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Dewald*, 317 A.3d 1020, 1030 (Pa. Super. 2024) (citation and brackets omitted). "We are bound by the facts found by the [suppression] court so long as they are supported by the record, but we review its legal conclusions *de novo*." *Commonwealth v. Rivera*, 316 A.3d 1026, 1031 (Pa. Super. 2024). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Commonwealth v. Lear*, 290 A.3d 709, 715 (Pa. Super. 2023) (citation omitted), *reversed on other grounds*, 325 A.3d 552 (Pa. 2024).

"Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted."

- 9 -

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (citation omitted). "[I]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Ochoa*, 304 A.3d 390, 396 (Pa. Super. 2023) (citation and brackets omitted); *see also Commonwealth v. Carmenates*, 266 A.3d 1117, 1123 (Pa. Super. 2021) (*en banc*) ("We are highly deferential to the suppression court's factual findings and credibility determination[s]."). "The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

In order to conduct a traffic stop for a violation of the Motor Vehicle Code, a police officer must have probable cause to believe an offense has occurred. *Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008). Instantly, Appellant concedes Officer Fridley had probable cause to effectuate "a justified traffic stop" of Appellant's vehicle, based on his observations of Appellant's above-described Motor Vehicle Code violations. Appellant's Brief at 22-23; *see also* Trial Court Opinion, 8/1/24, at 4 (determining the testimony of Officer Fridley at the suppression hearing "supports a finding that he had probable cause to believe that [Appellant] …, as the driver, violated the Motor Vehicle Code. Officer Fridley testified that he saw [Appellant's] vehicle being driven erratically, and the validity of the license plate could not

be verified. Accordingly, the stop of the vehicle was lawful." (capitalization modified)). Appellant further concedes "[i]t is valid that Office[r] Fridley could request [Appellant] to get out of the Jeep" following the lawful traffic stop. Appellant's Brief at 22; *see also Commonwealth v. Mack*, 953 A.2d 587, 589 (Pa. Super. 2008) ("[P]olice may request both drivers and their passengers to alight from a lawfully stopped car as a matter of right." (citations omitted)).

Appellant argues, however, that "Officer Fridley [was not] at a lawful vantage point" when he "view[ed] the firearm and subsequently seize[d] it under the plain view doctrine[.]" Appellant's Brief at 23; *see also id.* (asserting the Officer lacked "probable cause to enter the open car door and view the interior of the Jeep."). Appellant contends that Officer Fridley's opening of the vehicle's driver's side door was an unconstitutional violation that tainted the Officer's plain view of the firearm. *Id.* at 23 ("It was not until Officer Fridley made the decision to search the vehicle, opened the driver's side door, physically guide[d Appellant] out of the [vehicle], remain[ed] inside the now open compartment[,] and 'peek[ed]' under the driver's seat with his flashlight that he was able to view the firearm."); *see also id.* ("When Officer Fridley was in a lawful vantage point, just as any member of the public might be, he was unable to see a firearm in plain view.").

The Commonwealth counters the trial court properly denied Appellant's motion to suppress, where Officer Fridley observed the firearm in plain view,

- 11 -

from a lawful vantage point, and all elements of the plain view doctrine were met. *See* Commonwealth Brief at 10-15. The Commonwealth emphasizes it is undisputed that Officer Fridley had the authority to order Appellant to alight from the vehicle following the lawful traffic stop. *Id.* at 12. According to the Commonwealth, Officer Fridley did not need probable cause to open the vehicle's driver's side door. *Id.* at 14; *see also id.* at 14-15 ("Probable cause is not required to ask an occupant to step from a vehicle during a traffic stop, and there is [no] difference between Officer Fridley opening the car door versus [Appellant] doing so."). The Commonwealth further argues Officer Fridley's "use of [a] flashlight[] during the observation does not negate plain visibility." *Id.* at 13.

"When a police officer forcibly stops a motor vehicle, the stop constitutes a 'seizure' within the meaning of the Fourth Amendment and activates constitutional protections against unreasonable searches and detentions." *Commonwealth v. Malloy*, 257 A.3d 142, 147-48 (Pa. Super. 2021) (citation omitted). We have recognized that

> [a]s a general rule, a warrant stating probable cause is required before a police officer may search for or seize evidence. Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 502 (Pa. Super. 2021) (internal citations and quotation marks omitted).

One exception to the warrant requirement is the plain view doctrine, which we have explained as follows:

The plain-view doctrine permits the warrantless seizure of an object when: (1) **an officer views the object from a lawful vantage point**; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. There can be no reasonable expectation of privacy in an object that is in plain view.

*Id.* (citation omitted; emphasis added);[7] *see also Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007) (distinguishing the limited intrusion of the seizure of evidence in plain view from the greater intrusion of an automobile search).

This Court has stated that

[w]hile the law of search and seizure is constantly evolving, its focus remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of citizens and police officers by **allowing police to make limited intrusions** on citizens while investigating crime. *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa.[ ]Super. 2004). The court must be guided by common sense concerns, **giving preference to the safety of the officer** during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon. [*Commonwealth v.*] *Zhahir*, … 751 A.2d [1153,] 1158 [(Pa. 2000)].

*Mack*, 953 A.2d at 590 (emphasis added). The *Mack* Court further stated that "[a]llowing police officers to control all movement in a traffic encounter is a reasonable and justifiable step towards protecting their safety." *Id.* (citation and ellipses omitted).

---

[7] In the instant appeal, Appellant contends the evidence failed to establish only the first prong of the plain view doctrine, *i.e.*, police viewing the contraband from a lawful vantage point. *See* Appellant's Brief at 23-24.

Instantly, Officer Fridley testified at the suppression hearing that he stopped Appellant's vehicle, in a high-crime area, after observing undisputed Motor Vehicle Code violations. N.T., 3/6/23, at 9-11, 20-22. Officer Fridley approached the vehicle on the passenger side and conversed with the driver, Appellant, through the open window. *Id.* at 14, 24. Officer Fridley noticed that Appellant "seemed abnormally nervous," would not initially make eye contact with the Officer, and was "abnormally shaking" when he handed the Officer his identification. *Id.* at 14; *see also id.* at 26 (Officer Fridley testifying, on cross-examination, that although it is "fairly common" to see indicators of a motorist's nervousness during a traffic stop, Appellant exhibited "extremely obvious nervousness," which aroused the Officer's suspicions). Officer Fridley elaborated that based on his "training and experience[, he observed] several overt indicators of deceptive behavior, nervousness coming from [Appellant]." *Id.* at 26.

After Appellant provided his identification, Officer Fridley returned to his police cruiser to conduct a computer check of Appellant's records. *Id.* at 14. Officer Fridley testified that his records check revealed that Appellant was on parole for aggravated assault with a firearm. *Id.*

While he was performing the records check, Officer Fridley could partially see inside Appellant's vehicle and "observed [Appellant] bend down towards the floor of the vehicle more than once, and upon lifting himself back up, he was looking in his sideview mirror back at my patrol vehicle." *Id.* at

15; ***see also id.*** (Officer Fridley stating that when Appellant "looked in the sideview mirror, [Appellant] appeared to be seeing if I was walking up to the vehicle or where I was at, my location."). Officer Fridley testified that "as soon as I observed [Appellant] reaching towards the floor, … my goal was at that point to make him exit the vehicle." ***Id.*** at 29. The Officer further testified he "believed that [Appellant] was either attempting to brandish or conceal a weapon when I saw [Appellant's body] movements [inside the vehicle], and I wanted to make sure he was out of the vehicle for the safety of [Appellant], myself, and [the backup officer, Officer Strofe]." ***Id.*** at 33.

Officer Fridley then exited his cruiser, approached the vehicle, and requested Appellant "to exit the vehicle[; Appellant] began asking why." ***Id.*** at 15. Officer Fridley testified, "as I was explaining to [Appellant] the reason, he continued to reach … around" and made "some other random movements where I couldn't see his right hand." ***Id.*** at 16. The Officer believed that Appellant was reaching "down either between the seats or … down towards the floorboard." ***Id.***

Officer Fridley then opened the vehicle's driver's side door, "guided [Appellant] from the vehicle," and instructed him to walk towards the rear of the vehicle, where Officer Strofe was waiting. ***Id.*** at 16, 39; ***see also id.*** (Officer Fridley stating police also escorted Ms. Sanders from the vehicle). After removing all occupants from the vehicle, Officer Fridley, with the assistance of a flashlight, "looked to the area where [Appellant] had been

reaching." *Id.*; *see also id.* at 33 ("I intended to look where [Appellant] was reaching because I believed he was either attempting to retrieve or conceal a firearm."). Officer Fridley "immediately observed[,]" "directly under" the driver's seat, "what appeared to be a semiautomatic firearm." *Id.* at 17. *But see also id.* at 42 (Officer Fridley confirming on cross-examination that he did not see the firearm prior to illuminating the cabin of the vehicle with the flashlight). The Officer testified the firearm "wasn't pushed back. It was just right at the … lip of the floorboard there where the seat is on its tracks." *Id.* at 17.[8]

Officer Fridley testified he **observed the firearm while "[s]tanding in the street** at the driver's door, which was open, and peering into the vehicle" with a flashlight. *Id.* (emphasis added). The Officer further confirmed that when he observed the firearm, **at no point did any portion of his body enter the vehicle**. *Id.* at 48; *see also id.* at 45 (Officer Fridley confirming his prior testimony at Appellant's preliminary hearing that he "didn't have to get under [the vehicle's seat] and look with a flashlight or anything. You could see [the firearm] from where I was standing.").

The trial court, in denying Appellant's motion to suppress, specifically "found the testimony of [] Officer [Fridley] to be credible." Order/Findings of

---

[8] Officer Fridley testified he did not take any photographs of the firearm prior to securing it, as the firearm and Appellant "were both unsecured, and I immediately wanted to make the firearm safe to prevent any kind of safety issue before … [Appellant] was placed in handcuffs." N.T., 3/6/23, at 18.

Fact and Conclusions of Law, 4/19/23, at 3. As Appellant concedes, "the parties, on appeal, are bound by the credibility determination of the trial court[.]" Appellant's Brief at 20 (citation and quotation marks omitted); *see also Carmenates*, 266 A.3d at 1123 (stating appellate courts are "highly deferential to the suppression court's … credibility determination[s].").

The trial court further concluded that the warrantless seizure of the firearm was permitted under the plain view doctrine. *See* Trial Court Opinion, 8/1/24, at 5-6; Order/Findings of Fact and Conclusions of Law, 4/19/23, at 5-6. We agree.

This Court's recent decision in *Commonwealth v. Veney*, 328 A.3d 482 (Pa. Super. 2024) (unpublished memorandum),[9] is analogous and instructive. In *Veney*, Philadelphia Police Officer Chris Ficchi (Officer Ficchi), while on routine highway patrol, observed Jamir Veney (Veney) driving a vehicle that had unlawful window tint and effectuated a traffic stop. *Veney*, 328 A.3d 482 (unpublished memorandum at 1). Veney stopped the vehicle and rolled down his windows to converse with Officer Ficchi. *Id.* at 2. According to Officer Ficchi, Veney appeared very nervous and "kept moving his hands," despite the officer's repeated requests "to stop moving his hands[.]" *Id.*

> Officer Ficchi asked Veney for his driver's license and registration. He also asked Veney, "Do you have a permit to carry [a firearm],

_____

[9] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value.

or anything that I need to know about?" Veney stated, "No. I just got this weed." **Officer Ficchi then opened Veney's car door** and saw a magazine from a handgun sticking out from under Veney's seat in between Veney's legs. Officer Ficchi testified that he did not move anything in Veney's vehicle, nor did he have to look for anything in order to observe the firearm from his vantage point. He also stated he had a flashlight in his hand at this time.

*Id.* at 2-3 (citation and brackets omitted; emphasis added). Officer Ficchi then seized the handgun and placed Veney in custody. *Id.* at 3.

The Commonwealth charged Veney with firearms offenses, and Veney filed a motion to suppress evidence of the firearm, which the trial court denied. *Id.* Following Veney's conviction of firearms offenses, he appealed and challenged the denial of his suppression motion, asserting "[Officer Ficchi's] opening of [Veney's] car door after a traffic stop … was an unreasonable unconstitutional intrusion that tainted [Officer Ficchi's] observation of the firearm after he opened the door[.]" *Id.* at 4 (citation omitted).

This Court affirmed, holding the trial court properly denied Veney's suppression motion, where Officer Ficchi lawfully seized the firearm under the plain view doctrine:

Officer Ficchi observed the magazine sticking out from under the driver's seat, *from a lawful vantage-point—a public street* where Officer Ficchi lawfully stopped Veney for a Vehicle Code violation, following which *Officer Ficchi had the right to order Veney out of the car for his and [his partner's] safety.* At the suppression hearing, Officer Ficchi testified that he "opened [the] door due to the fact [Veney] was being really nervous. He was reaching around. And when he told me he had narcotics in the vehicle, that is when I opened the door." N.T. Suppression Hearing, 9/22/22, at 21-22. Officer Ficchi stated: "I opened the door,[] just in case— it is a better stand[]point for me in case I have to go hands-on or

- 18 -

deal with the actions of the defendant or the driver for that reason." *Id.* at 23.

Based on the circumstances, including Veney's behavior and admission regarding marijuana, the scope of the intrusion following the stop—opening the car door—was a "negligibly burdensome precaution" and objectively necessary for law enforcement safety. *See Commonwealth v. Ross*, … 297 A.3d 787, 792-93 (Pa. Super. 2023) ("[t]raffic stops are especially fraught with danger to police officers, so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely.") (citations omitted); *see also* [] *Malloy*, … 257 A.3d [at] 149 … ("[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop, **and attend to related safety concerns**.") (emphasis added) (citation omitted). We agree with the Commonwealth that, under these circumstances, *the mere fact that Officer Ficchi opened the car door, rather than waiting for Veney to do so himself, does not rise to the level of a constitutional violation or vitiate the officer's lawful vantage-point.*

*Veney*, 328 A.3d 482 (unpublished memorandum at 7-8) (italics emphasis added; bold emphasis in original); *see also id.* at 6 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) ("What is at most a mere inconvenience [to a driver who is asked to step out of his or her car during a traffic stop] cannot prevail when balanced against legitimate concerns for the officer's safety.")).

Instantly, Officer Fridley observed Appellant commit multiple Vehicle Code violations in a known high-crime area. N.T., 3/6/23, at 9, 20-21. During the stop, Officer Fridley observed Appellant exhibit "extremely obvious nervousness," make random movements, and bend his body toward the floor of the vehicle. *Id.* at 14-15, 26, 28. The Officer testified he "believed that

[Appellant] was either attempting to brandish or conceal a weapon" based upon his observations of Appellant's body movements in the vehicle. *Id.* at 33. Further, the Officer's check of Appellant's identification revealed Appellant was on parole for aggravated assault with a firearm. *Id.* at 14-15.

As stated above, Appellant concedes "[i]t is valid that Office[r] Fridley could request [Appellant] to get out of the Jeep" during the lawful traffic stop. Appellant's Brief at 22; *see also Mack*, 953 A.2d at 589. Under these circumstances, we conclude Officer Fridley was permitted to make the limited intrusion of opening the vehicle's driver's side door and escorting Appellant from the vehicle, to ensure the safety of all persons. *See Veney*, *supra*; *Mimms*, *supra*; *Mack*, *supra*. Like the situation in *Veney*, "the scope of the intrusion following the stop—opening the [vehicle's] door—was a negligibly burdensome precaution and objectively necessary for law enforcement safety." *Veney*, 328 A.3d 482 (unpublished memorandum at 7) (citation and quotation marks omitted).

Moreover, the trial court correctly determined that Officer Fridley's use of a flashlight did not vitiate the Officer's lawful vantage point, reasoning in its opinion as follows:

> The Pennsylvania Supreme Court has held that officers who observed stolen items [in plain view] through the windows of a van[, from a lawful vantage point outside of the vehicle] with the aid of a flashlight[,] were justified in seizing the items. *Commonwealth v. Milyak*, 493 A.2d 1346[, 1349] (Pa. 1985). Further, [in *Milyak*,] the fact that an officer required illumination from a flashlight to see into the darkened interior of the vehicle did not prevent the [contraband that police viewed inside the van]

- 20 -

from being in plain view or render the policeman's conduct unreasonable. [**See id.** at 1349, n.5 ("[T]he use of artificial light to look into a vehicle is generally justified[.]" (citations omitted)).]

Trial Court Opinion, 8/1/24, at 5-6.

Based upon the foregoing, we conclude the trial court correctly ruled that Officer Fridley lawfully seized the firearm under the plain view doctrine and properly denied Appellant's suppression motion. **See id.**; **see also Veney**, **supra**; **Commonwealth v. Parker**, 957 A.2d 311, 313, 316 (Pa. Super. 2008) (upholding trial court's denial of defendant/motorist's motion to suppress evidence, where the officer who initiated the lawful traffic stop performed a pat-down search of defendant's person, after observing defendant, while seated inside defendant's car, "reach down, dipping his shoulders right and left[,]" which "caused the officer to believe that [defendant] might be concealing a weapon." (citations omitted)); **Commonwealth v. Gallo**, 328 A.3d 522 (Pa. Super. 2024) (unpublished memorandum at 11) (upholding trial court's denial of defendant/motorist's motion to suppress evidence of drugs police observed, in plain view on defendant's driver's seat, during a lawful traffic stop, where police made their plain view observations after removing defendant from the car for officer safety). Accordingly, Appellant's first issue does not merit relief.

In his second issue, Appellant claims the trial court erred, and violated his rights under the Confrontation Clause, by limiting trial counsel's cross-examination of Officer Fridley at trial concerning his conviction in an unrelated

case, and suspension from the police force. ***See*** Appellant's Brief at 25-27.

Appellant points out that

> [t]he Confrontation Clause of the Sixth Amendment to the United
> States Constitution and Article I, Section 9 of the Pennsylvania
> Constitution confers the right upon a defendant in criminal
> proceedings to conduct cross-examination that reveals any motive
> that a witness may have to testify falsely.

***Id.*** at 25 (citing ***Commonwealth v. Bozyk***, 987 A.2d 753, 756 (Pa. Super.

2009) (discussed *infra*)). Appellant maintains Officer Fridley's disciplinary

history established his motive to testify falsely in Appellant's case. ***Id.*** at 27.

According to Appellant,

> [t]he fact that the trial court permitted very limited cross-
> examination [at trial] regarding Officer Fridley's suspension for
> misconduct demonstrates that the evidence is relevant, as defined
> by Pennsylvania Rule [o]f Evidence 402, and fall[s] within the
> purview of the Confrontation Clause. This finding of relevance
> also establishes that the trial court deemed that the suspension
> related to [Appellant's] criminal charges and establish a motive
> for fabrication.

***Id.*** (punctuation modified).

The Commonwealth counters the trial court properly limited Appellant's

cross-examination of Officer Fridley, and no Confrontation Clause violation

occurred. ***See*** Commonwealth Brief at 16-19.

> Contrary to [Appellant's] contention, Officer Fridley's unrelated
> conviction had no bearing on his actions in [Appellant's] arrest,
> would not reveal any motive for him to fabricate testimony, and
> [had] no bearing on [Appellant's] guilt or innocence. Resultingly,
> it was not appropriate impeachment; rather, the information
> would have resulted in nothing but confusion and misleading the
> jury as to the issues at hand.

- 22 -

*Id.* at 16-17. The Commonwealth further claims Appellant "suffered no prejudice. [Trial] counsel was able to elicit the testimony required to make his arguments." *Id.* at 17.

"We review a challenge to the trial court's evidentiary rulings for an abuse of discretion." *Commonwealth v. Williamson*, 330 A.3d 407, 414 (Pa. Super. 2025) (citation omitted); *see also Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (our "standard of review for a trial court's evidentiary rulings is narrow." (citation omitted)).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted).

"The threshold inquiry with admission of evidence is whether evidence is relevant." *Id.* (citation omitted). Evidence is relevant if "it has the tendency to make a fact more or less probable than it would be without the evidence[,]" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). Pursuant to Rule of Evidence 403, a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403; *see also Commonwealth v. Brown*, 212 A.3d 1076, 1086 (Pa.

Super. 2019) ("Admission of evidence rests within the sound discretion of the

trial court, which must balance evidentiary value against the potential dangers

of unfairly prejudicing the accused, inflaming the passions of the jury, or

confusing the jury." (citations and ellipses omitted)). "Unfair prejudice," in

the context of applying Rule 403, means "a tendency to suggest decision on

an improper basis to divert the jury's attention away from its duty of weighing

the evidence impartially." *Commonwealth v. Kane*, 188 A.3d 1217, 1228

(Pa. Super. 2018) (citation omitted); *see also* Pa.R.E. 403, cmt. "Exclusion

is limited to evidence so prejudicial that it would inflame the jury to make a

decision upon something other than the legal propositions relevant to the

case." *Commonwealth v. Knupp*, 290 A.3d 759, 776 (Pa. Super. 2023)

(citation, brackets, and quotation marks omitted).

This Court has discussed the admissibility of a police officer's disciplinary

history as follows:

> The pertinent case law permits a police witness to be cross-examined about misconduct **as long as the wrongdoing is in some way related to the defendant's underlying criminal charges** and establishes a motive to fabricate. *Commonwealth v. Peetros*, 535 A.2d 1026 (Pa. 1987) (police witness had been demoted after it was discovered he repeatedly took bribes; defendant was improperly restricted from impeaching [the officer] with this evidence since it bolstered entrapment defense in defendant's bribery prosecution); *Commonwealth v. Dawson*, 405 A.2d 1230 (Pa. 1979) (police officer was under investigation at trial and had been demoted for beating defendant's co-defendant; defendant should have been permitted to question officer about the matter since it provided officer with motive to obtain conviction against defendant as well as to fabricate fact that defendant had confessed); *Commonwealth v. Sullivan*, 402 A.2d 1019 (Pa. 1979) (police witness faced suspension based

upon outcome at defendant's trial and defendant should have been allowed to explore that matter at his trial); **_Commonwealth v. Shands_**, 487 A.2d 973 (Pa. Super. 1985) (defendant awarded new trial because he had not been permitted to impeach officer with fact that he was part of group of police officers who were racially biased, made false arrests, and perjured themselves in criminal prosecutions).

However, **if the prior police behavior is unrelated to the present matter and irrelevant, the trial court is permitted to restrict questioning on the prior incident.** **_Commonwealth v. Boczkowski_**, 846 A.2d 75 (Pa. 2004) (fact that police witness withheld evidence in prior case was not relevant because there was no evidence of withholding evidence in case at hand); **_Commonwealth v. Bright_**, 420 A.2d 714 (Pa. Super. 1980) (defendant could not impeach police officer with potential disciplinary action for excessive use of force by different officer since that cross-examination had no relationship to case in question); **_see also Commonwealth v. Guilford_**, 861 A.2d 365, 369 (Pa. Super. 2004) (quoting **_Bright_**, [420 A.2d] at 716) ("a witness may not be contradicted on 'collateral' matters, ... and a collateral matter is one which has no relationship to the case at trial.").

**_Bozyk_**, 987 A.2d at 757 (emphasis added; citations modified).

With respect to a defendant's Confrontation Clause rights, we have observed that "[w]hether a defendant was denied his right to confront a witness … is a question of law for which our standard of review is _de novo_ and our scope of review is plenary." **_Commonwealth v. Jones_**, 323 A.3d 13, 21 (Pa. Super. 2024) (citation and brackets omitted). This Court has explained the relevant law regarding the Confrontation Clause as follows:

The Confrontation Clause of the Sixth Amendment confers a constitutional right upon the defendant to conduct cross-examination that reveals any motive that a witness may have to testify falsely; however, that right is not unlimited:

- 25 -

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, ***Pointer v. Texas,*** 380 U.S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965), "means more than being allowed to confront the witness physically." ***Davis v. Alaska,*** 415 U.S. [308,] 315, 94 S. Ct. [1105,] 1110 [39 L.Ed.2d 347 (1974)]. Indeed, "'the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" ***Id.***, at 315-316, 94 S. Ct., at 1110 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)). Of particular relevance here, "we have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." ***Davis, supra***, at 316-17, 94 S. Ct., at 1110 (citing ***Greene v. McElroy***, 360 U.S. 474, 496 79 S. Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)). It does not follow, of course, that the Confrontation Clause … prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, **trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on** [] **cross-examination** based on concerns about, among other things, harassment, and prejudice, confusion of the issues, … or interrogation that is … only marginally relevant.

***Bozyk***, 987 A.2d at 756 (emphasis in original omitted; emphasis added) (quoting ***Delaware v. Van Arsdall***, 475 U.S. 673, 678-79 (1986)).

Our decision in ***Bozyk*** is analogous to the instant case. In ***Bozyk***, Michael Bozyk (Bozyk) was convicted of gun possession charges, related to a traffic incident involving Bozyk's vehicle observed by Philadelphia Police Officer Scott Schweizer (Officer Schweizer). ***Id.*** at 754. Prior to Bozyk's jury trial, the Commonwealth filed a motion *in limine* seeking to preclude reference

- 26 -

at trial to Officer Schweizer's police disciplinary history. *Id.* at 755; *see also id.* (noting that in 2000, several years before Bozyk's trial, the police internal affairs division "found a disciplinary violation occurred due to Officer Schweizer's false statement in a police report, and he was suspended for two days."). The trial court granted the Commonwealth's motion *in limine*, "conclud[ing] that the conduct resulting in the disciplinary action was both remote in time and isolated and that it had no nexus to the present matter." *Id.*

On appeal, Bozyk claimed the trial court abused its discretion in precluding him from cross-examining Officer Schweizer about his disciplinary history, which allegedly "provided a motive for Officer Schweizer to lie in [Bozyk's] prosecution." *Id.* at 757. Bozyk claimed the trial court's improper ruling deprived him of his Confrontation Clause rights. *Id.* at 756. We affirmed and rejected Bozyk's claim, reasoning as follows:

> The police investigation in 2000 would render Officer Schweizer less, rather than more, likely to commit perjury. The prior disciplinary action would motivate Officer Schweizer to be truthful in his police reports as well as on the witness stand so that he would not suffer further punishment. Officer Schweizer was not under investigation at the time of [Bozyk's] trial and had already been reprimanded. He did not need to ingratiate himself to his superiors by obtaining a conviction because the prior matter was closed. The [internal affairs] investigation occurred years before trial, it was resolved with a minor, two-day suspension, and the officer had not been subject to any other disciplinary proceedings. This officer was not involved in bribery or perjury.

*Id.* at 758. We "agree[d] with the trial court that the 2000 [internal affairs] investigation was collateral, irrelevant, and did not provide Officer Schweizer… with a motive to falsely accuse [Bozyk] of possessing a gun." *Id.*

> In the instant case, the trial court
>
> found that the probative value [of evidence of Officer Fridley's unrelated prior conviction] was outweighed by both unfair prejudice and confusing the issues. Accordingly, this court did not abuse its discretion or [commit] an error in sustaining the Commonwealth's [objection to cross-examination of the Officer on this subject].

Trial Court Amended Opinion, 12/5/24, at 4 (capitalization modified).

The trial court's finding is supported by the record and the law, and we agree with its conclusion. Like the situation in *Bozyk*, Officer Fridley's (1) "conduct resulting in the disciplinary action was both remote in time and isolated and [] it had no nexus to the present matter[,]" *Bozyk*, 987 A.2d at 755; and (2) unrelated, prior conviction "was collateral, irrelevant, and did not provide Officer [Fridley]… with a motive to falsely accuse Appellant of possessing a gun." *Id.* at 758. Accordingly, because Officer Fridley's conviction "is unrelated to the [charges against Appellant] and irrelevant, the trial court [was] permitted to restrict questioning on the prior incident." *Id.* at 757.

Moreover, the record contains no support for Appellant's bald allegation that the trial court implicitly "deemed that [Officer Fridley's] suspension [was] related to [Appellant's] criminal charges[.]" Appellant's Brief at 27. We conclude the trial court did not abuse its discretion in limiting Appellant's

cross-examination of Officer Fridley. Appellant's second issue does not merit relief.

In his third issue, Appellant contends the trial court improperly denied his motion for a mistrial, which he made in response to Appellant's above-described outburst during closing arguments. *See* Appellant's Brief at 28-30. Appellant asserts that, at trial, he

> informed the trial court that he was dissatisfied with [trial] counsel's cross-examination and closing argument. Although the trial court conducted a colloquy informing [Appellant] that he would be removed from the courtroom should he continue to interrupt counsel's closing argument, the court did not inform [Appellant] regarding his Sixth Amendment right to be present and that his conduct would result in a waiver of that right. Therefore, [Appellant's] request for [a] mistrial should have been granted.

*Id.* at 29 (internal citation to record omitted). Appellant complains the trial court never advised him of his Sixth Amendment rights, and cites our Supreme Court's decision in *Commonwealth v. Vega*, 719 A.2d 227 (Pa. 1998), which stated:

> The Sixth Amendment to the United States Constitution guarantees the right of an accused to be present in court at every stage of a criminal trial. A defendant who has not been charged with a capital offense may, however, waive that right either expressly or impliedly. … For an individual to be able to make a knowing and intelligent waiver of a constitutional right, he must have been aware of both the nature of the constitutional right and the risk of forfeiting the same.

*Id.* at 230 (internal citations omitted); Appellant's Brief at 28.

The Commonwealth counters the trial court properly denied Appellant's mistrial motion, where "[t]he incident did not prevent [Appellant] from

receiving a fair trial as [Appellant's] remarks did not prevent the jury from weighing the evidence and rendering a verdict." Commonwealth Brief at 20. The Commonwealth emphasizes "[t]he only time the jury heard [Appellant] interrupt was during [trial] counsel's closing. Moreover, [Appellant's] outburst was not even that inflammatory." *Id.* at 22. The Commonwealth claims Appellant should not be rewarded for his volitional, boisterous conduct, which the trial "court found to be nothing more than a tactical move by [Appellant] to ensure his chance at a new trial." *Id.* at 20. The Commonwealth points out that the trial court issued the jury a cautionary instruction, which, it asserts, "was adequate to overcome any potential prejudice"; therefore, the "extreme remedy [of a mistrial] was unnecessary." *Id.*

Further, the Commonwealth claims that no violation of Appellant's Sixth Amendment rights occurred, where "[Appellant's] behavior, and his refusal to change that behavior, led to him being removed" from the courtroom. *Id.* at 25; *see also id.* (pointing out that immediately after Appellant's outburst during closing arguments, the trial court "caution[ed Appellant] that additional outbursts would result in his removal."). The Commonwealth contends Appellant's reliance upon *Vega*, *supra*, is misplaced, as unlike the situation in *Vega*, the instant case does not present "a situation wherein [Appellant] expressly requested to be absent" from trial. *Id.* at 24.

Our standard of review in assessing the denial of a mistrial is as follows:

The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant

> or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Johnson*, 107 A.3d 52, 53 (Pa. 2014) (citation omitted); *see also Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (observing that a mistrial is an extreme remedy).

It is well settled that a mistrial is not necessary where cautionary instructions are adequate to overcome any potential prejudice. *Commonwealth v. Spotz*, 716 A.2d 580, 593 (Pa. 1998); *see also Commonwealth v. Philistin*, 774 A.2d 741, 743 (Pa. 2001) ("Prejudice that might result from a spectator outburst can be cured through a remedial instruction to the jury."). The law presumes that a jury will follow the trial court's instructions. *Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004).

"Whether and to what extent relief is due from an incident such as an emotional outburst in the courtroom is within the discretion of the trial court, and unless the unavoidable effect of the incident is to deny the defendant a fair trial, there is no error." *Commonwealth v. Bracey*, 662 A.2d 1062, 1072 (Pa. 1995). "[I]n the area of bystander misconduct, … it is primarily within the trial judge's discretion to determine whether the defendant was prejudiced by the misconduct." *Philistin*, 774 A.2d at 743 (citations omitted).

"A criminal defendant has both a rule-based right to be present for trial, Pa.R.Crim.P. 602, as well as a constitutional right." ***Commonwealth v. Tejada***, 188 A.3d 1288, 1293 (Pa. Super. 2018).

> The United States Constitution [and] the Pennsylvania Constitution … guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial. However, in ***Illinois v. Allen***, 397 U.S. 337, 90 S. Ct. 1057, 25 L.Ed.2d 353 (1970), the United States Supreme Court determined that the right to be present in the courtroom is not absolute and explicitly held,
>
> > that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.
>
> ***Id.*** at 343, 90 S. Ct. at 1060-1061, 25 L.Ed.2d at 359. ***See also Commonwealth v. Africa***, 466 Pa. 603, 353 A.2d 855 (1976).

***Commonwealth v. Basemore***, 582 A.2d 861, 866-67 (Pa. 1990) (footnotes omitted).

Instantly, the trial court determined it properly denied Appellant's mistrial motion, reasoning in its opinion as follows:

> It was not until the start of closing arguments on February 29, 2024[, that Appellant first] bec[a]me obstreperous. **It was clear to the trial court that** [**Appellant**] **was purposely trying to force a mistrial.** Moreover, when [Appellant] started interrupting the closing arguments, [the trial] court gave the jury a [cautionary] instruction, [N.T., 2/29/24,] at 9-10, which this

court reasonably determined to be sufficient to cure any perception/misperception the jury may have had.

Trial Court Amended Opinion, 12/5/24, at 4-5 (emphasis added; citations, capitalization, and punctuation modified).

At trial, the trial court gave the jury the following cautionary instruction in response to Appellant's outburst:

> THE COURT: Ladies and gentlemen, [during] the closing argument by [trial counsel], he was interrupted. I did give trial counsel an opportunity to speak with his client. I'm hoping you did not hear any of that [conversation], but if you did, it's not part of the evidence in this case. It has nothing to do with this case, [and is] not to be considered by you in any way. Your decision has to be solely based on the evidence presented during this trial. Also, as I already explained to you, each side gets an opportunity to make a closing argument that is being done by the attorneys and not by individuals. And so, I'm instructing you that the appropriate person to make the closing argument on behalf of [Appellant] is [trial counsel]. And I'm going to have [trial counsel] start doing that again. And I am advising [Appellant] that he should not interrupt.

N.T., 2/29/24, at 9-10 (punctuation modified).

We conclude the trial court's cautionary instruction was adequate to overcome any potential prejudice Appellant may have suffered from his own outburst. *See Spotz*, 716 A.2d at 593 (stating a mistrial is not necessary where cautionary instructions are adequate to overcome any potential prejudice); *Philistin*, 774 A.2d at 744 (upholding the trial court's denial of defendant's motion for a mistrial made in response to a courtroom outburst by spectators during the announcement of the jury's verdict, concluding, "[g]iven the facts that the outburst occurred only once, that it was promptly

brought under control by the trial court, and that a thorough curative instruction was given to the jury before the proceedings continued, we are satisfied that any potential prejudice was abated."); *Commonwealth v. Marshall*, 568 A.2d 590, 596 (Pa. 1989) (upholding the trial court's denial of defendant's motion for a mistrial made in response to an emotional outburst toward the defendant by one of the victims, stating, "[g]iven the fact that the outburst was brief, occurred only once, and was followed by an immediate instruction to the jury, we are satisfied that any prejudice was diffused[,] and that [defendant's right to a] fair trial was not threatened.").

Moreover, we conclude no violation of Appellant's right to be present for trial occurred, where the trial court expressly warned Appellant that additional courtroom outbursts would result in his removal, yet he persisted, impliedly waiving his right to be present. *See Basemore*, *supra*. Appellant solely caused the circumstances that led to his removal. We discern no error or abuse of discretion in the trial court removing Appellant from the courtroom, after he ignored its express warning, due to his outrageous and intentionally disruptive behavior.

Finally, contrary to Appellant's claim, *Vega* is inapposite. In *Vega*, prior to the start of trial, after the trial court refused the defendant's request for the appointment of new counsel, the defendant **expressly** communicated that he did not wish to be present during trial. *See Vega*, 719 A.2d at 228-29. Our Supreme Court held that a defendant is entitled to a colloquy to "insure a

defendant is aware of the dangers and disadvantages of waiving his right to be present during trial." *Id.* at 230. However, the *Vega* Court limited its holding to cases where a defendant communicates an "**express** waiver" of his right to be present at trial, **distinguishing "those situations where a defendant has *impliedly* waived his right to be present at trial through his conduct** or voluntary unexplained absence[.]" *Id.* at 229 (emphasis added).

In sum, we conclude Appellant was not deprived of a fair and impartial trial, and the trial court properly denied the extreme remedy of a mistrial. *See Johnson*, *supra*; *Judy*, *supra*. Accordingly, Appellant's third issue merits no relief.

In his final issue, Appellant claims the trial court erred when, following his outburst during closing arguments, it failed to "*sua sponte* engage in a sufficient inquiry as to [Appellant's] competency to proceed with trial and assist [trial] counsel[.]" Appellant's Brief at 30 (capitalization modified). Appellant contends his outburst should have prompted the trial court to (1) *sua sponte* call into question his mental competency; and (2) pause the trial and conduct a competency hearing, as opposed to ordering Appellant's removal from the courtroom. *Id.* at 31 ("[T]he trial court violated [Appellant's] right to a fair trial by failing to order a competency hearing or evaluation pursuant to Pennsylvania law."). According to Appellant, "there were sufficient signals to call his competence into question," including

his repeated outburst[s] before the jury, continued arguing with the trial court[,] and the nonsensical request to testify while the jury was deliberating the final severed charge presented at trial[,] after having declined to testify during the defense case in that portion of the proceedings.

*Id.*

The Commonwealth counters no *sua sponte* competency inquiry was warranted, where Appellant exhibited no indication that he was unable to understand the proceedings or participate in his defense. **See** Commonwealth Brief at 25-28.

Throughout trial[, Appellant] had the ability to consult with [trial] counsel with a reasonable degree of understanding, participated in his defense, testified in his defense, and demonstrated that he understood the nature or object of the proceedings against him.

*Id.* at 27. According to the Commonwealth, Appellant's unsolicited remarks during closing arguments "were not bizarre or abnormal, or of such a nature that would indicate a competency or mental problem." *Id.*

It is established that "[a] defendant is presumed competent[,] and it is [his] burden to show otherwise, the determination of which is within the sound discretion of the trial court." **Commonwealth v. Bainey**, 332 A.3d 66, 72 (Pa. Super. 2025) (citation omitted); **see also Commonwealth v. Rainey**, 928 A.2d 215, 236 (Pa. 2007) (stating a defendant's burden of establishing incompetency is a preponderance of the evidence); Pa.R.E. 601(a).[10] "A

_____

[10] Pennsylvania Rule of Evidence 601 provides as follows:

*(Footnote Continued Next Page)*

determination of a defendant's competency rests in the sound discretion of the trial court and can be disturbed on appeal only on a showing of an abuse of that discretion." *Commonwealth v. Bomar*, 826 A.2d 831, 860 (Pa. 2003). A defendant bears the burden to

> establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense. To obtain a hearing on this claim, [an a]ppellant would have to proffer evidence sufficient to meet this burden.

*Commonwealth v. Smith*, 17 A.3d 873, 900 (Pa. 2011) (internal citations omitted); *see also* 50 P.S. § 7402(a) (incompetence to proceed on criminal charges); *Commonwealth v. Blakeney*, 108 A.3d 739, 752 (Pa. 2014) ("Competency to stand trial is measured by the relationship between counsel

---

**Rule 601. Competency**

**(a)** General Rule. Every person is competent to be a witness except as otherwise provided by statute or in these rules.

**(b)** Disqualification for Specific Defects. A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:

**(1)** is, or was, at any relevant time, incapable of perceiving accurately;

**(2)** is unable to express himself or herself so as to be understood either directly or through an interpreter;

**(3)** has an impaired memory; or

**(4)** does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601.

and client: To be deemed competent, the defendant needs to have the ability to consult with counsel with a reasonable degree of understanding, in order to participate in his defense, and he must be able to understand the nature or object of the proceedings against him."). A trial court is only required to order a competency hearing if there "is reason to doubt the defendant's competency." *Commonwealth v. Uderra*, 862 A.2d 74, 88 (Pa. 2004).

A trial court "may order an 'incompetency examination' of a criminal defendant on its own motion and also upon application by the Commonwealth or the defendant." *Commonwealth v. Humphrey*, 283 A.3d 275, 290 (Pa. 2022) (quoting 50 P.S. § 7402(c), (d)). Our Supreme Court has stated that

> [b]ecause the right not to be tried while incompetent is so fundamental, the trial court must "protect [it] even if the defendant has failed to make a timely request for a competency determination." [*Cooper v. Oklahoma*, 517 U.S. 348, 354 n.4 (1996)]; *Drope v. Missouri*, 420 U.S. 162… (1975) (Where there are indications of incompetency, a defendant has a substantive due process right not to be tried while incompetent)[.]

*Commonwealth v. Mason*, 130 A.3d 601, 662 (Pa. 2015). Finally, appellate courts afford "great deference" to "a trial judge's competency determination … because the judge has the opportunity to personally observe the defendant's behavior." *Bomar*, 826 A.2d at 860 (citations omitted).

Instantly, the trial court opined that it correctly declined to *sua sponte* order a competency hearing, reasoning as follows:

> [The] defense rested its case after [Appellant] testified and was subject to cross[-]examination on February 28, 2024. N.T., 2/28/24, at 142. Up until this time, [Appellant] clearly was competent to assist [trial] counsel through[]out the case in chief.

Trial Court Amended Opinion, 12/5/24, at 4.

Our review confirms the trial court's determination is supported by the record, and we discern no abuse of its discretion in failing to *sua sponte* order a competency hearing. Appellant competently testified in his own defense at trial, while represented by trial counsel, and exhibited no indicia of incompetency. ***See generally*** N.T., 2/28/24, at 116-41.[11] As stated above, the first time Appellant exhibited any unexpected courtroom behavior was during closing arguments in, as the trial court found, an unsuccessful attempt to manufacture a mistrial. ***See*** Trial Court Amended Opinion, 12/5/24, at 4-5. Appellant points to nothing that occurred during trial, aside from his own last-minute outburst, to establish that he was incapable of understanding the proceedings or unable to participate in his defense. ***See Smith***, 17 A.3d at 900.

Moreover, we are persuaded by the Commonwealth's claim that "it was not [Appellant's] lack of competency, but rather, his realization of the close of trial and pending verdict, that [may have] spurred his" outburst during closing arguments. Commonwealth Brief at 28. No violation of Appellant's due

_____

[11] Appellant testified that Ms. Sanders owned the vehicle. ***See*** N.T., 2/28/24, at 116. Appellant denied bringing a firearm into the vehicle or knowing about the existence of the firearm in the vehicle. ***Id.*** at 118, 126, 137-38. However, Appellant conceded that the Commonwealth had presented evidence that forensic testing revealed Appellant's DNA was on the surface of the firearm, but Appellant was unable to explain its presence. ***Id.*** at 126; ***see also id.*** at 90-94 (testimony of forensic DNA expert linking Appellant to the firearm).

process rights occurred, and we will not afford Appellant relief for his own courtroom misconduct. Appellant's final issue merits no relief.

Based on the foregoing, we discern no abuse of discretion or error of law in the trial court's denial of Appellant's motion to suppress evidence and its rulings at trial. We thus affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2025